## ANGLO-AMERICAN LAND, MORTGAGE AND AGENCY COMPANY vs. BENJAMIN H. DYER.

Barnstable.    March 6, 1902. — June 18, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Corporation*, Foreign, assessment of shareholders. *Jurisdiction. Contract. Attorney. Accord and Satisfaction. Evidence*, Proof of foreign law, Burden of proof.

An action to recover an assessment on shares not fully paid can be maintained here by a foreign corporation against a stockholder resident in this Commonwealth.

The statute under which a foreign corporation was organized provided that the memorandum of association and the articles of association should bind each member to the same extent as if he had subscribed his name thereto and that all moneys payable by any member of the company in pursuance of any condition or regulation of the company should be deemed to constitute a debt due from such member to the company.    The articles of association provided that the directors from time to time might make calls upon the members in respect of all moneys unpaid on their shares and that each member should pay the amount of every call so made on him to the persons and at the times and places appointed by the directors.    The certificates of shares contained a provision that the holders took them subject to the articles of association and the rules and regulations of the company.    *Held*, that these various provisions created a valid and binding contract with the stockholders of the corporation to pay assessments for the amounts unpaid on their shares, which could be enforced against them in the courts of this Commonwealth or of any other State or country where service could be obtained upon them and jurisdiction over them acquired.

The memorandum of association of a foreign corporation contained the provision "The nominal capital of the company is £500,000, divided into 50,000 shares

of £10 each, of which the first issue shall be 25,000 shares, with power to increase such capital, and to issue all or any part of the original or increased capital at a premium or at a discount." *Held,* that one who subscribed for the shares of this corporation had waived the right, if otherwise he would have had it, to object that the whole fifty thousand shares had not been subscribed for and therefore that an assessment for the unpaid portion of the shares issued could not be enforced.

Where the shares of a corporation are liable to an assessment and the directors have power to make it, the necessity or wisdom of the assessment cannot be controverted, unless in case of fraud.

*Whether* an attorney at law has authority by virtue of his employment as such to agree without his client's sanction to a compromise of his client's suit, may be regarded as still an open question in this Commonwealth. Per MORTON, J.

The attorney of a corporation, whose shareholders were liable to an assessment made, arranged a compromise by which the shareholders were to be released on payment of a part of the amount assessed. This afterwards was rejected by the directors as *ultra vires* as to the creditors of the company. The money paid by the shareholders under the attempted compromise was returned to them. A shareholder thus receiving his money wrote to the corporation that he did not wish his money returned, as he was undetermined what to do, and that he held the money subject to the order of the company. But he kept the money. Later he resisted the payment of the full assessment on the ground, that a compromise had been made. *Held,* without considering whether the attorney had authority to make the compromise, that the attempted compromise was at most an accord without satisfaction, that the shareholder was bound by his acceptance of the return of the money in spite of his attempt to qualify his action, and also, that as to creditors at least the proposed compromise was *ultra vires.* *Whether* such a contract would be valid between the corporation and its stockholders if duly entered into and executed, was not considered.

Under Pub. Sts. c. 169, § 73, the law of a foreign country may be proved without authenticated copies if a witness who has examined the copy and compared it with the original testifies that it is correct.

*Semble,* that where one objects to the certificate of a public official that a company is incorporated, because it is not under an official seal, it is incumbent upon him to show that there is an official seal.

MORTON, J. This is an action to recover certain assessments made upon forty shares of the capital stock of the plaintiff company held by the defendant. The shares are of the par value of £10 each and the liability of the shareholders is limited to the par value. The assessments in suit amount to £6 per share, and assessments amounting to £2 per share had been previously paid by the defendant, — £1 when he bought the stock in 1884 and £1 on an assessment made in 1885. The exceptions set out all the material evidence. At the close of the evidence, the defendant requested certain rulings all of which except two were refused, and the jury were directed to return a verdict for the plaintiff. The case is here on exceptions by the defendant to

the ruling thus given, and to the refusal to rule as requested, and on exceptions to the refusal to make certain rulings that were requested during the trial.  We shall consider only the exceptions that have been argued by the defendant, treating the others as waived.

Amongst the rulings requested and refused was one that on all the evidence the action could not be maintained and that a verdict be directed for the defendant.  The plaintiff is a corporation organized under the companies' acts of Great Britain. The first question, and what is said on the defendant's brief to be the principal question, is whether assessments made by foreign corporations can be collected by such corporations in the courts of this Commonwealth of stockholders residing here.  If the other grounds of liability are present, we see no objection to the maintenance of such an action against resident stockholders in the fact that the corporation seeking to collect the assessments is a foreign corporation.  The liabilities of resident stockholders in foreign corporations have been recognized and enforced in numerous cases in the courts of this Commonwealth.  It is unnecessary to do more than refer to the recent case of *Howarth* v. *Lombard*, 175 Mass. 570, where the authorities are collected and considered and where it was held that an assessment upon the defendant as a stockholder in a bank in the State of Washington could be collected here.  The objection that the remedy is by a sale of the stock as has been held in regard to local assessments in various cases in this State, (*New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349, 354, and cases cited,) is removed by the fact that the defendant has if not expressly at least impliedly agreed to pay to the plaintiff any assessments that might be made.  In his application for the stock, which was in writing, he agreed to accept the shares that might be allotted to him " upon the terms of the prospectus and memorandum and articles of association " and authorized the insertion of his name upon the memorandum of association.  The statute under which the corporation was organized and which must be taken to be a part of the contract between the defendant and the plaintiff, (*Howarth* v. *Lombard, ubi supra ; Hutchins* v. *New England Coal Mining Co.* 4 Allen, 580,) provides that the memorandum of association shall bind the members of the company

" to the same extent as it would " if each member had subscribed his name and affixed his seal thereto and there were contained in it a covenant on his part and his heirs, executors and administrators to observe all the conditions of such memorandum. The statute makes similar provisions in regard to the articles of association, and further provides that " all moneys payable by any member of the company, in pursuance of the conditions and regulations of the company, or any of such conditions or regulations, shall be deemed to be a debt due from such member to the company." The articles of association also provide that " The directors may from time to time make such calls as they think fit upon the members in respect of all moneys unpaid on their shares, and each member shall pay the amount of every call so made on him to the persons, and at the times and places appointed by the directors." The certificate that was issued to the defendant provided that he took the shares " subject to the Articles of Association and the Rules and Regulations of the Company." The effect of these various provisions was we think to create a valid and binding contract between the defendant and the plaintiff company by which he became bound to pay to it such calls or assessments as the directors might make upon him from time to time in respect to the moneys unpaid on his shares, and which could be enforced against him in the courts of this State or of any other State or country where proper service could be obtained upon and jurisdiction acquired over him.

The defendant further objects that the capital stock had not all been subscribed for when the assessments were made, and that therefore, under *Katama Land Co.* v. *Jernegan*, 126 Mass. 155, and other cases decided in this Commonwealth the action cannot be maintained. The memorandum of association provides that, " The nominal capital of the company is £500,000, divided into 50,000 shares of £10 each, of which the first issue shall be 25,000 shares, with power to increase such capital, and to issue all or any part of the original or increased capital at a premium or at a discount," etc. Upwards of thirty-seven thousand shares have been issued. The provision quoted above formed a part of the contract between the defendant and the plaintiff company, and by agreeing that the first issue should be twenty-five thou-

sand shares with power to increase the capital the defendant has waived the right, if he would otherwise have had it, upon which we express no opinion, to object that the whole fifty thousand shares had not been subscribed for.    There is nothing contrary to public policy in such an agreement.    If the provision that the first issue should be twenty-five thousand shares be regarded as a stipulation that that number of shares must be subscribed for, then it appears, that the stipulation has been complied with.    It is not necessary to consider whether it should be so regarded, or what would be the effect under the English law, which is the law that must govern this case of assessments made before the stipulated capital had been subscribed.    See *Ornamental Pyrographic Woodwork Co.* v. *Brown*, 2 H. & C. 63; Lind. Comp. (5th ed.) 410.

The defendant further objects that there is nothing to show for what purpose the calls or assessments were made, or that any necessity existed for them in the condition of the company. These are matters which are not open to inquiry here.    The necessity or wisdom of an assessment where it is within the power of the directors to make it, as it was here, cannot be controverted, at least in the absence of fraud, by the stockholders. *Oglesby* v. *Attrill*, 105 U. S. 605.    2 Thompson's Law of Corp. § 1710.    Cook, Stock & Stockholders, § 113.

The defendant further contends that a valid and binding agreement of compromise had been entered into between him and the plaintiff company before the bringing of this suit in respect to the assessments sued for.    The effect of his contention is and must be, though it is not so stated, that such agreement operates as a bar to the maintenance of this action.    It appears that the attorneys of the plaintiff company made an offer of compromise which was accepted by the defendant for himself and others.    The agreement was in substance that the defendant and those joining in it should be released from further liability for the assessments upon payment of one of the assessments, which was specified, with interest, and the payment of such further sums as on investigation should appear to be their proportion of the amount necessary to pay off the indebtedness of the company.    The defendant paid to the attorneys the amount of the assessment agreed on and interest.    The only

authority which the attorneys had to make the offer arose out of their employment as attorneys. Afterwards the board of directors was advised that the proposed compromise would be *ultra vires* as to creditors of the company, and was impracticable, and the defendant was so informed, and was asked whether the money that he had paid should be returned to him, or whether it should be retained and applied by the company towards the payment of the ·assessments that were due. In consequence of a letter received from him the money which he had paid for himself and others was returned to him. In acknowledging the receipt of the money he wrote that he. did not wish what he had himself paid returned, as he was undetermined what to do, and that he held the money subject to the order of the· plaintiff company. But he kept the money and nothing more has been done under the attempted compromise.

Whether an attorney at law has authority by virtue of his employment as such to agree without his client's sanction to a compromise of his client's suit out of court may be regarded as still an open question in this Commonwealth though it is said that the weight of authority in this country seems to be against such an authority. *New York, New Haven, & Hartford Railroad* v. *Martin*, 158 Mass. 313. *Dalton* v. *West End Street Railway*, 159 Mass. 221. *Lewis* v. *Gamage*, 1 Pick. 346. We do not find it necessary to consider or decide the question in this case. The attempted compromise was at the most an accord without satisfaction. *New York, New Haven, & Hartford Railroad* v. *Martin*, 158 Mass. 313, 315. *Herrmann* v. *Orcutt*, 152 Mass. 405. The defendant accepted the return of the money which he had paid, though attempting to qualify his action, and is bound thereby. It is clear also that, as to creditors at least, the proposed compromise was *ultra vires*. *Sawyer* v. *Hoag*, 17 Wall. 610. *Upton* v. *Tribilcock*, 91 U. S. 45. *Spackman* v. *Evans*, L. R. 3 H. L. 171. Whether such a contract would be valid between the corporation and its stockholders if duly entered into and executed we need not consider. *Sawyer* v. *Hoag*, 17 Wall. 610, 619.

The statutes of Great Britain were proved in the manner provided by Pub. Sts. c. 169, § 73. See *Frith* v. *Sprague*, 14 Mass. 455. It was not necessary that the copies should be authenticated. " A copy proved to be a true copy, by a witness who has

examined and compared it with the original" is admissible. 1 Greenl. Ev. § 488.

Certain other objections have been urged by the defendant such as that a retiring allowance was made by the directors to one Bennett, that one of the sections in the articles of association referred to "the scheme of arrangement of 1895" and that another section provided that the directors might exercise all the power conferred by "the Companies' Seals Act, 1864," and that there was no evidence of what the scheme of arrangement of 1895 was, or what the powers conferred by "the Companies' Seals Act" were. Neither of these objections seems to us to relate to matters that are shown to be material. It is also objected that the certificate of the registrar of joint stock companies that the plaintiff "was incorporated under the Companies' Acts, 1862 to 1880, as a limited company, on the thirty-first day of October, one thousand eight hundred and eighty-two" should have been excluded because not under the seal of that officer, and because there was no evidence that he had not an official seal. It would seem that if the defendant objected to the certificate because it was not under seal, it was for him to show that there was an official seal. But we do not think that the defendant was harmed or could have been harmed by the admission of the certificate. It sufficiently appeared from other evidence in the case that the plaintiff was a corporation.

We have considered the objections that have been argued by the defendant and the result is that we think that the exceptions should be overruled.

*So ordered.*

*R. A. Hopkins & H. P. Harriman,* for the defendant.
*O. Powell* (of New York), for the plaintiff.