HASTINGS LUMBER COMPANY *vs.* ISABEL A. EDWARDS & others, executors.

Suffolk.   January 13, 1905. — September 7, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Contract.   Corporation.*

The directors of a corporation, in the absence of a statute, a by-law or a vote of the corporation authorizing it, have no power by vote to release one of the subscribers for the stock of the corporation from his obligation to take and pay for a part of the shares for which he has subscribed.

By the law of the State of Maine one of the subscribers for the stock of a corporation who signs an agreement to take and pay for a certain number of its shares, if all the stock is subscribed for and the corporation is formed, and all the conditions of the subscription are performed, is bound to take and pay for all the shares he has subscribed for, whether the other signers of the subscription paper have paid for their shares or not.

CONTRACT, by a corporation organized under the laws of the State of Maine, against the executors under the will of Frank Aldrich, late of Cambridge, for the amount of two calls made on the defendants after the death of their intestate, one on July 25, 1902, for $3,750, and the other on October 3, 1902, for $2,500, as the last two instalments of stock of the plaintiff which had been subscribed for by the defendants' testator at the formation

of the plaintiff as a corporation in January, 1898. Writ in the Supreme Judicial Court dated November 22, 1902.

The case was sent to an auditor, who reported in favor of the plaintiff. At the hearing of the case before *Braley*, J., without a jury, the single ground relied upon by the defendants was the alleged invalidity of the two calls on the ground that one Garret Schenck, another subscriber for the stock of the plaintiff, had by a vote of the directors been omitted from the list of subscribers and his subscription had not been enforced.

The justice made a finding of facts, and at the request of the parties reserved the case on the questions of law raised, for the full court to determine whether on the facts found by him judgment should be entered for the plaintiff or for the defendants.

The contract of subscription for the stock of the plaintiff, which was signed by the defendants' testator and by Schenck and all the other subscribers, was as follows:

" The undersigned hereby agree each with the other and with the corporation hereafter to be organized or chartered for the purposes hereinafter designated, to subscribe, take and pay for, at par, the number of shares in the capital stock of such corporation, of the par value of One Hundred Dollars each, set against their respective names.

" The Capital Stock of said corporation shall be Three Hundred Thousand Dollars ($300,000.00), divided into Three Thousand (3000) Shares of the par value of One Hundred Dollars ($100.00) each.

" Said corporation shall be formed for the purpose of acquiring and operating the property of the Wild River Lumber Company.

" The aforesaid subscriptions are made upon the following conditions, viz.:

" (1) That a sale of the property of the Rumford Falls Paper Company is made to some other corporation.

" (2) That the whole amount of the aforesaid Capital Stock is subscribed for.

" The first payment on account of said subscription shall be 20 % of the amount of the stock subscribed respectively, and shall be payable when the title of said property has been approved, and a proper conveyance made, and the consummation

of the agreement relative to the purchase thereof; and the balance of said subscription shall be payable when and as fast as may be necessary to comply with the terms of such purchase, and for the purpose of operating upon said property, if such course is decided upon after the organization of such corporation."

All the shares were subscribed for, Aldrich and Schenck each subscribing for two hundred and fifty; and it appeared that the other conditions set forth in the contract, the sale of the Rumford Falls property, the purchase, the approval of the title and the conveyance of the Wild River Lumber Company's property, were performed.

The president of the plaintiff was Daniel F. Emery, Jr. The letter of the president and the transaction of the assignment referred to in the opinion were as follows:

"Portland, Maine, Jan. 20th, 1899.
"Frank Squier, Esq.,
     "New York City, N. Y.

"Dear Sir: — Yours of the 19th inst. is at hand, in regard to Mr. Schenck's note. Mr. Schenck holds 60 shares of stock, for which he gave his note, on four months for $6000.00 agreeing to send us a check for $100. for the four months' interest to make his payment on the same basis as the other subscribers, that is, cash, March 5th, 1898, so that he owes us $6100.00 and interest on the note from July 5th to date, amounting to a total of $6280.00 which, if he will pay us through you, I would, and I think the other subscribers would be in favor of freeing him from his liability on the subscription list, and if necessary, and the stockholders wish, I will assume personally the balance of his subscription, which would be $19,000.00.

"On his payment to you of $6280.00 please surrender the note, and you and he can make any trade you see fit for the 60 shares certificate that he holds. I enclose the note endorsed over to you, which, if not paid, please return to us. If he sells you his stock, please send it in promptly and we will issue a new certificate therefor. It would be well for you to have him request the Hastings Lumber Co. in writing, to transfer the balance of his subscription (amounting to $19,000.) to me, so that we can have it on file.

"Yours very truly,
"Daniel F. Emery, Jr."

"March 17, 1899.

"Hastings Lumber Company,
                    "Portland, Me.

"Gentlemen: Please transfer the balance of my subscription for stock in the Hastings Lumber Company to Perkins, Goodwin & Company of New York, and oblige,

                    "Yours truly,
                              "Garret Schenck."

"March 22, 1899.

"Hastings Lumber Company,
                    "Portland, Me.

"Gentlemen: Please transfer the balance of above subscription to stock in Hastings Lumber Company to Daniel F. Emery, Jr., or to treasury stock, as you may see fit.

                    "Perkins, Goodwin & Company."

The case was submitted on briefs at the sitting of the court in January, 1905, and afterwards was submitted on briefs to all the justices.

*E. B. Gibbs*, for the plaintiff.

*J. Willard*, for the defendants.

BRALEY, J. The plaintiff, a foreign corporation organized and chartered under the laws of the State of Maine, brings this action on a written agreement signed among others by the defendants' testator, who subscribed for two hundred and fifty shares of its capital stock. After the contract took effect there was a full compliance with all precedent conditions upon which payment depended, while one hundred and eighty-seven and one half shares of his subscription have been taken and paid for by the testator, or since his death by his executors, for which certificates have been issued. Payment for these shares was made from time to time as called for by the directors under the following provision. "The first payment on account of said subscription shall be 20 % of the amount of the stock subscribed respectively, and shall be payable when the title of said property has been approved, and a proper conveyance made, and the consummation of the agreement relative to the purchase thereof; and the balance of said subscription shall be payable when and as fast as may be necessary to comply with the terms of such

purchase, and for the purpose of operating upon said property, if such course is decided upon after the organization of such corporation."

Among the subscribers the name of Garret Schenck appears, who after agreeing to take and pay for two hundred and fifty shares finally paid for sixty, and then endeavored to transfer his obligation or "the balance of my subscription for stock" to strangers to the agreement.

The by-laws of the corporation provide that "the board of directors shall have general supervision and control of the business of the corporation, and shall have full power to take all such steps as in their judgment shall be for the best interests of the company, . . . they may issue and dispose of such part of the treasury stock as they deem for the best interests of the corporation."

Acting under this authority it appears from the records of the board, that after the attempt to transfer had been undertaken, at a meeting held on April 19, 1900, and when making an assessment upon the subscribers, they voted to omit "the subscription of Garret Schenck." It is to be inferred that no notice of this call was sent to him. While the vote to omit was limited in terms to the assessment then levied, and no vote of a similar exemption appears in making the remaining assessments required to complete the payment of the full capital, yet the actual omission of his stock, especially from the last two calls that are the subject of this action, is the ground on which the defendants refuse to pay upon those calls. For they contend that such omission rendered each of these assessments void, and uncollectible from the other subscribers.

The wrongful conduct of which they really complain is, that successfully to float the enterprise all the capital was to be paid in as called for, and because this was to be accomplished by payments made in instalments it would be inequitable for the corporation to require the other stockholders to risk their money and to contribute while the subscription of Schenck was treated as exempt.

It is conceded by the parties that the action is brought properly in the name of the corporation, and their respective rights are to be determined by the laws of its domicil. *Penobscot &*

*Kennebec Railroad* v. *Bartlett*, 12 Gray, 244. *Callender, Mc-Auslan & Troup Co.* v. *Flint*, 187 Mass. 104.

In the consideration of the case the distinction is not to be forgotten that the action is not to recover an unpaid assessment levied upon the capital stock, but is brought upon the agreement "to take and pay for" the shares treated as a contract at common law to recover the amount remaining due of the testator's subscription. *Worcester Turnpike* v. *Willard*, 5 Mass. 80, 86. *Salem Mill Dam* v. *Ropes*, 6 Pick. 23. *City Hotel* v. *Dickinson*, 6 Gray, 586. *Boston, Barre & Gardner Railroad* v. *Wellington*, 113 Mass. 79, 87. *Anglo-American Land, Mortgage & Agency Co.* v. *Dyer*, 181 Mass. 593, 596. *Belfast & Moosehead Lake Railway* v. *Moore*, 60 Maine, 561. *Phœnix Warehousing Co.* v. *Badger*, 67 N. Y. 294, 300.

No questions concerning the cumulative statutory remedy providing for the forfeiture of stock by sale for unpaid assessments, or the maintenance of an action at law to recover for a balance remaining after such sale, or the liability of a transferee for assessments after an assignment to him of shares by an original subscriber are involved. See *Mechanics' Foundry & Machine Co.* v. *Hall*, 121 Mass. 272 ; *Lewey's Island Railroad* v. *Bolton*, 48 Maine, 451 ; *New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349, 354 ; *Brigham* v. *Mead*, 10 Allen, 245.

The transaction shown by the assignment, and the letter of the president of the company, set forth in the report, presumably was the reason for the vote of omission. But it is clear that these papers, with the action taken, cannot be treated as transferring the title of the stock to nor its acceptance by the plaintiff.

As the entire capital was fully taken, and none of the shares appear to have been forfeited, there was no treasury stock the directors could issue. Furthermore the by-law was insufficient to confer upon them any power, at the request of a subscriber, to convert shares for which he had subscribed, but did not wish to take and pay for, into such stock, and thus relieve him from his subscription. If there had been a formal agreement between him and the directors that the number of his shares should be reduced, that he should take only those he already had paid for,

and surrender the balance to the corporation, while his original subscription should be cancelled, such an arrangement in the absence of a statute, by-law or vote of the corporation expressly permitting it, but not appearing in this case, would have been void. It neither would have relieved him, nor worked a discharge of the testator's liability. *Penobscot & Kennebec Railroad* v. *Dunn*, 39 Maine, 587. *White Mountains Railroad* v. *Eastman*, 34 N. H. 124. *Meyer* v. *Blair*, 109 N. Y. 600. *Addison's case*, L. R. 5 Ch. 294. *In re Esparto Trading Co.* 12 Ch. D. 191.

And while it may be inferred that it might have been the intention of the president, and possibly of a part of the directors, to treat the remaining one hundred and ninety shares as treasury stock, this purpose was not accomplished, and the corporation so far never has dealt with the proposition, or accepted a surrender of his stock, or relieved Schenck from his original promise.

The judgment of the board that the payments were necessary, and that the amount should be fixed as shown by these votes, was within the authority conferred upon them, and where no fraudulent purpose is shown, their action is conclusive upon the subscribers without previous notice. *Glenn* v. *Marbury*, 145 U. S. 499.

No evidence appears, nor is any claim advanced, that the directors in the exercise of their large discretionary powers in the supervision of the general affairs of the company, or in calling for the payment of subscriptions, acted otherwise than in good faith, and for the general welfare of the company, or that they have shown any intentional partiality between the subscribers. Eventually no subscriber could be held under the agreement for more than the amount of his subscription. As the contract of Schenck was not cancelled or discharged, the mere order of time, and nothing more, when payment should be enforced by appropriate corporate action taken against him would be immaterial.

On recurrence to the contract, it is there stated that every subscriber agrees " to subscribe, take, and pay for, at par, the number of shares . . . of the par value of one hundred dollars each, set against their respective names." This is an express individual promise made by every signer of the subscription

paper, the performance of which is not dependent upon payments by other subscribers. *Boston, Barre & Gardner Railroad* v. *Wellington, Worcester Turnpike* v. *Willard, Salem Mill Dam* v. *Ropes, Belfast & Moosehead Lake Railroad* v. *Moore, ubi supra. Northwood Union Shoe Co.* v. *Pray,* 67 N. H. 435.

Upon reference to the decisions of the Supreme Judicial Court of Maine, where similar contracts have been under consideration, it fully appears that such construction uniformly has been given by that court in all cases where, as in the present case, it has been sought to hold a subscriber to perform his agreement. *Bangor Bridge* v. *McMahon,* 10 Maine, 478. *South Bay Meadow Dam* v. *Gray,* 30 Maine, 547. *Kennebec & Portland Railroad* v. *Kendall,* 31 Maine, 470. *Kennebec & Portland Railroad* v. *Jarvis,* 34 Maine, 360, 363. *Buckfield Branch Railroad* v. *Irish,* 39 Maine, 44. *Penobscot Railroad* v. *Dummer,* 40 Maine, 172, 175. *Belfast & Moosehead Lake Railroad* v. *Brooks,* 60 Maine, 185, 190. *Belfast & Moosehead Lake Railroad* v. *Cottrell,* 66 Maine, 185, 190. *Skowhegan & Athens Railroad* v. *Kinsman,* 77 Maine, 370, 371, 372. *Rockland, Mt. Desert & Sullivan Steamboat Co.* v. *Sewall,* 78 Maine, 167. See also *Penobscot & Kennebec Railroad* v. *Bartlett,* 12 Gray, 244.

Thus in the case of *Kennebec & Portland Railroad* v. *Jarvis,* 34 Maine, 360, 363, it was said by Chief Justice Shepley, when considering a like contract, " The promise is not to pay all ' legal assessments.' It is to pay for the shares as he should be required by a vote of the company, without any reference to assessments or payments to be made on other shares." And this decision is followed in a full opinion by Chief Justice Appleton in *Bucksport & Bangor Railroad* v. *Buck,* 65 Maine, 536, 541. Nor are the cases of *Somerset & Kennebec Railroad* v. *Cushing,* 45 Maine, 524, and *Pike* v. *Bangor & Calais Shore Line Railroad,* 68 Maine, 445, on which the defendants rely, in conflict with them.

In these last cases the validity of the assessments under consideration arose under charters that so far as expedient or necessary permitted them to be levied and enforced from time to time only upon all the shares of the corporation. But in neither case did the cause of action declared on rest, or the decision go, upon the basis of an express contract to take and pay for stock.

In accordance with the terms of the report judgment is to be entered in favor of the plaintiff for $6,250, with interest at the legal rate on $3,570 of this amount from July 25, 1902, and on the remainder of $2,500 from October 3, 1902, to the date of entry.

*So ordered.*