EDWARD A. FILENE *vs.* LOUIS E. KIRSTEIN & others.

Suffolk.    December 5, 1929. — May 1, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Contract,* Construction, Performance and breach.

A "settlement agreement" in writing among the four principal stock-holders of a Massachusetts mercantile corporation, made to effect a reorganization of its corporate structure and to bring about a revision of the stock holdings of the parties, who foresaw the possibility of combining the company with other companies operating "a similar

business in other places," recited that the parties contemplated that they should be employed by the corporation with equal compensation to each; "that each shall have a reasonable opportunity to participate *pro rata* according to his then holdings of voting common stock in any financial advantages which may directly or indirectly accrue to them as such stockholders from any matter or dealing which may substantially change the control of the said corporation"; that the parties would "not accept and retain compensation whether by way of salary, bonus or other form of compensation in the aggregate greater than any one of them so employed may receive during the same period from the" corporation; that none of them would "sell his holdings of common stock as a whole or substantially as a whole for cash or its equivalent . . . without causing" the "others to have the right to sell a *pro rata* part of his common stock at the same time, at the same price and on the same terms and conditions"; that none of them would exchange his stock or any of it for stock or securities of any other corporation or association without causing the "others to have the right to exchange a *pro rata* part of his own common stock at the same time, at the same rate, and on the same terms and conditions"; and that all the parties should have a reasonable opportunity to participate *pro rata* according to their common stock holdings "in any financial advantages corresponding to those which may directly or indirectly accrue to them and each of them as stockholder or stockholders from any sale or exchange (whether by one transaction or a series of transactions) of their majority holdings of common stock as a block or substantially as a block." In a bill in equity, one of the parties to the agreement alleged that the others, who owned a controlling interest in the stock of the corporation, had signed a "deposit agreement" constituting them a committee, of which the plaintiff was not a member, to organize a holding corporation and with authority "to assent to any plan for the consolidation or merger of any such holding corporation with any other corporation"; and that the terms of the "deposit agreement" violated the provisions of the settlement agreement; and he sought equitable relief. On an appeal from a final decree dismissing the bill after a demurrer had been sustained, it was *held*, that

(1) The mere facts, that the plaintiff was excluded from membership in the committee and from its powers under the "deposit agreement"; that, while the shares of the original corporation remained in the holding corporation, the defendants had full power to vote them; that the defendants were to be directors of the holding corporation, and proposed to transfer the shares deposited with the holding corporation to a second corporation which should hold the voting shares of the corporations to be merged; that the shares in the second holding corporation were to be held by five persons, including the three defendants but not the plaintiff as trustees; that the plaintiff was not to hold any position therein, but the defendants were to cause themselves to be elected directors, officers and managers, and to obtain terms and conditions which were denied to the plaintiff; and that the defendants were to receive financial benefits as officials or

employees in the combined companies not accorded to the plaintiff, did not show an intended violation of the settlement agreement or entitle the plaintiff to relief;

(2) There was nothing in the settlement agreement giving the plaintiff the right to participate in the management of any new company or combination, or to be employed therein;

(3) The equality assured the plaintiff by the settlement agreement was the equality of a stockholder of the original corporation as such;

(4) Provisions in the settlement agreement as to equal salaries related only to salaries in the original corporation, and not to salaries in the holding companies;

(5) The defendants, without violating any provisions of the settlement agreement, might secure for themselves advantages as officers and employees of the combined companies without violating the terms and conditions of the settlement agreement;

(6) The rights of the plaintiff in the original corporation were not impaired by the "deposit agreement" executed by the defendants;

(7) The plaintiff would suffer no unequal loss of right to inspect the books of the original corporation by depositing his stock under the deposit agreement or by the other acts contemplated by the defendants;

(8) The settlement agreement imposed no duty on any of the parties to it to refrain from becoming an officer in a corporation or member of a committee or trustee to hold the stock of the original corporation;

(9) The question of the wisdom of the defendants' action in not availing themselves more fully of the plaintiff's services was not before the court upon the record;

(10) Relief from conduct of the defendants in violation of their duties as officers and directors of the original corporation could not be given in this suit, but only in a suit by or in behalf of the corporation;

(11) Allegations in the bill that the defendants had adopted measures calculated to cause the listing privileges of the plaintiff's common shares to be withdrawn by the New York and Boston stock exchanges did not set forth a violation of a provision of the settlement agreement, that the defendants were "to use their best and every reasonable effort to list" the stock of the original corporation on the Boston and New York exchanges; such provision should not be extended so as to prohibit a withdrawal of the stock from the stock exchange after it had been listed for a reasonable length of time;

(12) The demurrer properly was sustained.

BILL IN EQUITY, filed in the Superior Court on June 17, 1929, and afterwards amended, described in the opinion.

The defendants demurred to the original bill. The demurrer was heard by *F. T. Hammond,* J., and by an interlocutory decree was sustained. The plaintiff then was

allowed to amend the bill. The defendants demurred to the amended bill. That demurrer was heard by *Lummus,* J., and was sustained, and a final decree was entered dismissing the bill.

The plaintiff appealed from the decrees sustaining the demurrers and from the final decree.

*J. W. Davis* of New York, (*S. L. Whipple & E. C. Park* with him,) for the plaintiff.

*E. F. McClennen,* (*J. J. Kaplan* with him,) for the defendants.

CARROLL, J. This suit in equity is to prevent the violation of a written contract of July 19, 1928, referred to herein as the settlement agreement. The parties to this agreement were the plaintiff and the defendants, which defendants together are, it is alleged, the controlling stockholders of Wm. Filene's Sons Company, a Massachusetts corporation.

The purpose of the settlement agreement was to effect a reorganization of the corporate structure of the Filene corporation and to bring about a revision of the stockholdings of the parties in the corporation. The parties foresaw, the bill alleges, the possibility of combining the company with other companies operating "a similar business in other places." The settlement agreement recites that the parties contemplate that they shall be employed by the said corporation with equal compensation to each; "that each shall have a reasonable opportunity to participate *pro rata* according to his then holdings of voting common stock in any financial advantages which may directly or indirectly accrue to them as such stockholders from any matter or dealing which may substantially change the control of the said corporation"; that the parties "will not accept and retain compensation whether by way of salary, bonus or other form of compensation in the aggregate greater than any one of them so employed may receive during the same period from the Company"; that each of the defendants agrees with the others and with the plaintiff that he "will not sell his holdings of common stock as a whole or substantially as a whole for cash or its equivalent . . . without causing Edward A. Filene and said others to have the right to sell

a *pro rata* part of his common stock at the same time, at the same price and on the same terms and conditions"; that each of the defendants agrees with the plaintiff and with the others not to exchange his or their common stock or any part thereof "for stock or securities of any other corporation or association without causing Edward A. Filene and said others to have the right to exchange a *pro rata* part of his own common stock at the same time, at the same rate, and on the same terms and conditions." The settlement agreement also stipulated that all the parties should have a reasonable opportunity to participate *pro rata* according to their common stock holdings "in any financial advantages corresponding to those which may directly or indirectly accrue to them and each of them as stockholder or stockholders from any sale or exchange (whether by one transaction or a series of transactions) of their majority holdings of common stock as a block or substantially as a block."

On March 27, 1929, the defendants signed a document, called the deposit agreement, in which they (spoken of as the committee in this agreement) were parties of the first part, and such holders of the common stock of the Wm. Filene's Sons Company as should become parties were parties of the second part. Any shareholder could deposit his stock under the terms of the agreement. The committee was to organize a holding company and was authorized "to assent to any plan for the consolidation or merger of any such holding corporation with any other corporation." The seventh paragraph of the deposit agreement provides that prior to the expiration of twenty days from the publication of the plan of reorganization, "neither the Committee nor the Trustees under the voting trust . . . nor any holding corporation organized by the Committee shall . . . vote the shares of the said Filene Company in favor of any action which . . . requires the affirmative approval of more than a majority of the common stock of said Filene Company," unless the written approval of certificate holders representing at least two-thirds of the common stock of the Filene company is given. It was provided in the deposit agreement that anyone depositing his stock after the first

publication of the notice, as provided in section 9, could within twenty days withdraw his shares.

The plaintiff's bill alleges a threatened violation of the settlement agreement of July 19, 1928; that the defendants made an agreement for exchange of their stock and have entered into an arrangement with bankers and others to form a consolidation; that in effect the deposit agreement is contrary to the settlement agreement and in violation of the plaintiff's rights under the settlement agreement.

In the Superior Court the defendants' demurrer was sustained. From the interlocutory decree sustaining the demurrer and the final decree dismissing the bill, the plaintiff appealed.

The plaintiff contends that under the settlement agreement certain rights were given him of which he will be deprived by the defendants if the deposit agreement and the arrangement of merger are carried out; that according to the deposit agreement he is not to be a member of the committee nor to exercise any of the powers given to the committee; that while the shares of the Filene company remain in the holding company, the defendants shall have full power to vote them; that the defendants are to be the directors of the holding company; that the defendants propose to transfer the shares deposited with the holding company to a second corporation which shall hold the voting shares of the corporations to be merged; that the shares of this second holding company are to be held by five persons including the three defendants, but not including the plaintiff, as trustees; that the plaintiff is not to hold any position therein, but the defendants are to cause themselves to be elected directors, officers and managers, and to obtain terms and conditions which are denied the plaintiff; and that the defendants are to receive financial benefits as officials or employees in the combined companies, not accorded to the plaintiff.

The settlement agreement gave to the plaintiff the same advantages, with reference to the sale or exchange of stock in the Filene company, as the defendants possessed. They could not dispose of their holdings without giving the plain-

tiff the same right to sell at the same price and on the same terms and conditions. The plaintiff also, *pro rata* according to his holdings, was to participate in any financial benefits, corresponding to any which might accrue to the defendants as stockholders from any sale or exchange of stock. Under these provisions in the settlement agreement the plaintiff's rights as a stockholder were to be protected. The stockholders as such were to share *pro rata* in the sale or exchange of stock or in other financial advantages resulting to them "as stockholder or stockholders."

The section in the settlement agreement in which the words "on the same terms and conditions" appear is section six. This section is divided into six subsections, all of them relating to the rights of the plaintiff as a stockholder. There is nothing in this section giving the plaintiff the right to participate in the management of any new company or combination, or to be employed therein. The equality given him is the equality of a stockholder as such. The equality did not extend beyond this to terms or conditions relating to other details of the contemplated merger. The words "the same terms and conditions" are restricted to the sale or exchange of stock, and in each subsection they have a similar meaning. They are to be construed, taking the contract as a whole, in connection with the terms of the contract with which they are associated; they are not to be so extended beyond this that in all other respects the plaintiff is to have the "same terms and conditions" as the defendants. *Dole* v. *Johnson*, 3 Allen, 364. Subsection c of section six, giving to the plaintiff the benefit of participating *pro rata* with the defendants in any financial advantages which may accrue to them, is limited to the advantages coming to them "as stockholder or stockholders from any sale or exchange" of their holdings. There is nothing in this section giving the plaintiff any right to participate with them in the control or direction of the new company.

The other sections of the settlement agreement, relating to employment at an equal salary for each of the parties, are confined to employment in the Wm. Filene's Sons Company. No such equality of employment is contem-

plated in either of the holding companies, nor is it stipulated that such employment shall be offered the plaintiff. The defendants could not deprive the plaintiff of his equal rights with the defendants as a stockholder, and the rights given him to employment in the Wm. Filene's Sons Company. Nor are such acts intended by them. They could, however, secure for themselves advantages as officers and employees of the combined companies, without violating the terms and conditions of the settlement agreement.

The deposit agreement and the notice given to the stockholders do not deprive the plaintiff of the benefits secured to him by the settlement agreement. All of the depositing stockholders are to be treated alike and have the same *pro rata* voting rights in the new company. They are to deposit their stock with a committee, and while the defendants are the committee their stock, as well as the stock of all the assenting stockholders, is to be subject to the same control. If the plaintiff thought it wise to deposit his holdings, he gave the committee certain powers — powers which they had over all the stock deposited. If the plaintiff thought otherwise, he had the same control in the Filene company as he did before the merger was attempted. His rights as a stockholder in the Filene company are not impaired; and if he did deposit his stock, under the terms of the proposed merger, he had in common with all the stockholders the right to withdraw within twenty days. Neither are his rights as an officer of the Filene company diminished if the terms of the deposit agreement are carried out. Although the powers of the committee are broad, the members of the proposed committee are, as we understand the settlement agreement, the holders of the majority of the voting stock in the Filene company; and, if no merger is carried out, as such holders of the voting power they have the power over the affairs of the Filene company which came from such control.

If the stock is deposited, each of the four parties is deprived of the same right to inspect the books. No advantage is given to one which is denied to the others, and each loses to the same extent. Even if it be assumed that

each of the parties surrenders the right to inspect the books by assenting to the deposit agreement, and we do not think it necessary to decide this question, see *Post & Co.* v. *Toledo, Cincinnati, & St. Louis Railroad,* 144 Mass. 341; *Powelson* v. *Tennessee Eastern Electric Co.* 220 Mass. 380, there is no right given up by one that is not equally surrendered by all.

The settlement agreement imposed no duty on any of the parties to it to refrain from becoming an officer in a corporation or member of a committee or trustee to hold the stock of the Filene company. The stipulations of that agreement as to employment, compensation and official position related solely to the Wm. Filene's Sons Company.

It is alleged in the bill that the defendants have not consulted the plaintiff regarding the business of the company and have acquired other companies without consultation with him; that they have failed to hold directors meetings and have prevented the plaintiff from exercising his powers as an officer and employee of the company. The question of the wisdom of the defendants' action in not availing themselves more fully of the plaintiff's services is not before us. See in this connection *Anglo-American Land, Mortgage and Agency Co.* v. *Dyer,* 181 Mass. 593, 597.

It is not alleged that the plaintiff's right to hold office or remain as an employee of the company is questioned; it is not stated that he has been excluded from directors' meetings. Under the by-laws the president is to preside at stockholders' meetings and to sign stock certificates. What additional duties were to be performed by him or what additional powers were given him are not stated. Considering the frame of the bill and the nature of the relief asked for, the plaintiff is not entitled to relief in equity under these particular allegations.

In failing to hold directors' meetings, in preventing the finance committee "from functioning," and in the other matters alleged with reference to the corporate management, no injury was done the plaintiff; the injury, if any, was to the corporation, and misconduct in managing the affairs of a corporation is a wrong to the corporation itself for which the stockholder must seek relief by means of the corporation.

*Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495. *United Zinc Companies* v. *Harwood,* 216 Mass. 474, 475, 476.

The bill also alleges that the defendants have adopted measures calculated to cause the listing privileges of the plaintiff's common shares to be withdrawn by the New York and Boston stock exchanges. The settlement agreement recites that the defendants are "to use their best and every reasonable effort to list" the stock of the company on the Boston and New York exchanges. There is no allegation that this stipulation of the settlement agreement was not performed, and there is no express provision in the settlement agreement imposing an obligation on the defendants to maintain the listing of the Filene stock on the two exchanges. It may be that after a stock is listed on the exchange it might be thought wise to withdraw it; and the agreement is not to be extended so as to prohibit a withdrawal of the stock from the stock exchange after it has been listed for a reasonable length of time. See *Butterick Publishing Co.* v. *Boynton,* 191 Mass. 175. The length of time the stock has been listed does not appear; all that is shown is that the defendants have adopted measures calculated to have the listing privileges withdrawn. The plaintiff has not in our opinion by this allegation stated a case for equitable relief.

As we construe the plaintiff's bill, the benefits accruing to the defendants in which the plaintiff does not share do not amount to a deprivation of the property rights of the plaintiff: these benefits are not inconsistent with the plaintiff's rights as a stockholder or with his rights under the settlement agreement. The deposit agreement does not infringe on the plaintiff's interests under the settlement agreement. The equality given him as a stockholder is not taken away; he is at liberty to join in the plan or not, as he decides; no financial advantage belonging to him as a stockholder in the Filene company is taken away, and no financial advantage accrues to any stockholder as such, that does not belong to him. The decree sustaining the demurrer was right.

*Decrees affirmed with costs.*