HOWLAND DAVIS & others *vs.* THOMAS H. ARNOLD.

Suffolk.   March 6, 7, 1929. — April 15, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Contract,* What constitutes, Consideration, Account stated.  *Frauds, Statute of.  Sales Act.  Sale.  Damages,* In contract.

In an action of contract by a stockbroker against a customer, there was evidence that the defendant in October orally agreed to purchase one hundred shares of stock of a corporation, or such portion thereof as the plaintiff might allot to him, at a certain price; that the plaintiff then had no such shares; that, after the plaintiff had received a large number of shares of such stock, a paper was sent to the defendant confirming the order and stating that the plaintiff had allotted seventy shares to the defendant; that, in conversations with the defendant in October, November and December, the plaintiff requested the defendant to take up the shares, but the defendant, without refusing to do so, "put . . . [the plaintiff] off"; that in such conversations the only mention made was of "participating" shares; that on October 31 the plaintiff sent the defendant a confirmation statement, which specified that the defendant was "long" seventy shares and indicated that he was indebted to the plaintiff for the purchase price thereof, but did not indicate that they were "participating" shares; that the defendant signed the statement, thereby acknowledging its correctness; that the custom of trade was that shares of stock were delivered at the seller's office and were not tendered to the purchaser; that, in March of the following year, the plaintiff set apart seventy shares of the stock and sent them to a bank with a draft on the defendant for the purchase price; that the defendant refused to pay the draft, notice of his refusal being received by the plaintiff in April; that the plaintiff thereafter held the shares for delivery to the defendant; and that the market price of the shares declined.  The defendant testified that he had told the plaintiff in October, November and December that he refused to take the stock, but admitted that he signed the confirmation statement of October 31. The plaintiff in one count of the declaration sought to recover the

purchase price of the shares, in a second count to recover damages for failure by the defendant to accept the stock, and in a third count to recover the purchase price on an account stated. A judge hearing the action without a jury found that there was no delivery nor passing of title to the defendant and no accounting between the parties; and found for the plaintiff under the second count. There was no specific finding as to when the defendant refused to accept the stock, but from the amount of damages awarded it appeared that the refusal probably was found to have been in March. *Held,* that

(1) A finding was warranted that the defendant agreed to accept and pay for the seventy shares; and that a contract of sale was made between the parties;

(2) The confirmation statement of October 31 was a sufficient memorandum to satisfy the statute of frauds;

(3) That statement did not constitute an accounting together between the parties; the finding by the judge that there was no such accounting was warranted;

(4) In view of the finding that there had been no delivery of the shares, the plaintiff could not recover the contract price for them;

(5) The plaintiff's damages for breach of the contract must be assessed as of the date when the plaintiff had notice of the defendant's repudiation of the contract and, on conflicting evidence, that date was a question of fact for the trial judge; his findings were warranted.

*Whether* a contract for the sale of unissued stock is subject to the provisions of G. L. c. 106, § 6, *was not decided* in the action above described.

CONTRACT. Writ dated April 8, 1926.

The action was heard in the Superior Court without a jury by *Lummus,* J. The pleadings, material evidence and facts found by the judge are described in the opinion. The judge found for the plaintiff in the sum of $1,392.96. The judge refused to rule, as requested by the plaintiff, that the plaintiff was entitled to recover on all the evidence, and that, as a matter of law, Exhibit 11 constituted an accounting between the parties. The following requests by the defendant for rulings were refused:

"1. That on all the evidence no contract to buy stock from the plaintiffs was entered into by the defendant."

"14. That if a contract existed here, it was such a contract as to fall within the requirements of the statute of frauds."

Both parties alleged exceptions.

*G. Karelitz,* for the defendant.

*L. Curtis, 2d,* for the plaintiffs.

CARROLL, J. The plaintiffs are stockbrokers. In 1925

their salesman sold some bonds to the defendant; on this transaction there is a balance of $35 due the plaintiffs which is not disputed. In October of 1925, the plaintiffs' salesman showed the defendant a circular relative to an offering of participating stock of the American Brown Boveri Electric Corporation, hereafter referred to as the corporation, offered at the price of $50 per share "if, as and when authorized and issued." The defendant agreed to purchase one hundred shares of this stock or such lesser amount as might be allotted to him by the plaintiffs. Under St. 1926, c. 381, the plaintiffs filed a notice to admit facts, in which the defendant was asked if in October of 1925, he orally agreed with the plaintiff's agent to purchase "100 shares of said stock of [or?] such portion of 100 shares as might be allotted to him at $50 a share." To this the defendant replied "Yes, but misrepresentations were made."

The plaintiffs had joined a group to sell the stock of this corporation, and had agreed to take four thousand shares or such lesser amount as might be allotted them. They were allotted less than four thousand shares, and had received orders for more shares than this allotment. The number of shares to be given to each customer was reduced proportionally below the amount he had agreed to take. On this basis the defendant was allotted seventy shares.

There was evidence that on October 13, 1925, the plaintiffs sent the defendant a ticket or confirmation slip which stated that there had been sold to him seventy shares of the corporation; that this ticket did not state when the price was payable, and was marked "Delayed," which meant, according to the plaintiffs' testimony, that the stock had not at that time been received by them; that on October 17 a second confirmation slip was sent the defendant, which stated that the total price of the seventy shares was $3,500, and contained the words "Cash October 20." The defendant denied that he received either of these communications.

Between October 13 and October 17, the plaintiffs received the stock certificates of the corporation. Their agent testified that he interviewed the defendant near the end of October and informed him that he had been allotted seventy shares

of the stock; that the defendant expressed himself as pleased and stated he had purchased thirty additional shares in the market so as to bring "his holdings up to 100 shares," and he would call at the plaintiffs' office to "see about paying for and taking the stock"; that the plaintiffs' agent saw the defendant several times.   He further testified that in the conversations about the corporation stock the defendant did not refuse to take the stock; that "the defendant at these interviews always put him off when it came to a question of taking and paying for the stock, saying that he was busy or going away and would see about it in the near future."   The defendant denied that he ever said to the plaintiffs' agent that he purchased thirty additional shares in the market, and testified that he told the agent "at one or more of these interviews in October, November or December, 1925, that the stock was not as represented and that he refused to take it."

One of the plaintiffs' bookkeepers testified that he sent to the defendant on October 31, 1925, addressed to him, a paper. It was sent in blank by the plaintiffs and was returned to them signed by the defendant (marked Exhibit 11) as follows:

BLAKE BROTHERS & Co.
                    Founded 1858
111 Devonshire Street    5 Nassau Street
        Boston                    New York
        Members, Boston Stock Exchange   New York Stock
        Exchange
                                    BOSTON ·        391

THOMAS ARNOLD
Dear Sir:—

We enclose herewith statement of your account as shown by our books at close of business Oct. 31, 1925.

If correct, please sign this confirmation and return in the enclosed addressed envelope.

Your prompt attention will be appreciated.
                              Very truly yours,
                                    BLAKE BROS. & Co.

$3535.00........Dr.        BALANCE     Cr. $............
LONG                       SHORT
70 Am. Brown Boveri
    The above statement of my account is correct.
              (Sign here)............THOMAS. H. ARNOLD
Note exceptions

The bookkeeper testified that this statement was not sent in connection "with an audit made by outside auditors, but was just a routine check-up or audit by the office force." It is not disputed that this statement was signed by the defendant and returned to the plaintiffs.

There was evidence that the custom of trade in such transactions was that deliveries were to be made at the seller's place of business and it was customary for the purchaser "to send in the money with directions when to send the securities, or to call in and take them up; that it was not customary for the sellers to go out and find the purchaser and tender the stock."

On March 17, 1926, the plaintiffs segregated seventy shares of the corporation stock for the purpose of sending these seventy shares with draft attached to the defendant. A draft for the price of the securities, with interest, and the $35 balance remaining from the bond transactions, was drawn on this date and sent with the seventy shares of stock to a bank for collection. The defendant refused to pay the draft and ordered the stock returned. The plaintiffs received the stock and the information that the defendant refused to take it, on April 7, 1926. Since that date the plaintiffs have held the seventy shares in readiness for delivery to the defendant. At the trial seventy shares were "tendered . . . to the court to be held by it pending the outcome of this litigation, but the court directed that the shares be retained by the plaintiffs." The case is before us on the exceptions of both the plaintiffs and the defendant.

The first and fifth counts of the declaration relate to the bond transaction. The second and sixth counts are to recover the agreed price of the corporation stock, alleging that

the defendant agreed to take and pay for the stock but has refused to fulfill the agreement and that the plaintiffs have been ready to deliver the stock and have held the same for the defendant. The third and fourth counts allege that because of the defendant's failure to receive and pay for the stock the plaintiffs were damaged. The seventh count is to recover on an account stated. The answer is a general denial, the statute of frauds, and false representations knowingly made by the plaintiffs or their agents.

The judge found that there was no delivery or passing of title as alleged in the second and sixth counts, prior to the defendant's refusal to carry out the contract; that there was no fraud on the part of the plaintiffs, and no accounting together as set out in the seventh count. He found that the plaintiffs' cause of action was an action for damages, and that the plaintiffs were entitled to recover the sum of $1,392.96.

1. The defendant contends that no legal contract to buy the stock was made because the plaintiffs were not bound to allot any shares to the defendant; that there was no consideration for the defendant's promise to take one hundred shares or such smaller amount as might be allotted to him.

There was evidence that the seventy shares were allotted to the defendant. There was also evidence that the defendant was notified of this allotment. The finding of the judge that a valid contract was made is not to be set aside. It has been held that a contract similar in some respects to the contract here in question is valid, *Harris' Case,* L. R. 7 Ch. Ap. 587, *Household Fire Ins. Co.* v. *Grant,* 4 Ex. D. 216; and in *Anglo-American Land, Mortgage & Agency Co.* v. *Dyer,* 181 Mass. 593, a contract by which the defendant agreed to accept the shares that might be allotted to him was held to be valid and binding. In the case at bar no specific finding was made that the defendant received the confirmation slips showing the allotment of seventy shares, nor that the plaintiffs' agent called on the defendant and notified him that he had been allotted seventy shares. But this evidence was in the case, and the defendant admitted that he talked with the plaintiffs' salesman after October 17, 1925. If the judge believed that the confirmation slips were sent to

the defendant and that the conversations as narrated by the salesman took place, he would be warranted in finding that the defendant agreed to accept and pay for the seventy shares allotted him. Furthermore, on October 31, 1925, the plaintiffs sent to the defendant the statement (Exhibit 11) of his account showing that seventy shares of the stock were his allotment. The defendant signed this statement and returned it to the plaintiff. The trial judge therefore was right in finding that the plaintiffs could recover on the contract.

2. The defendant also contends that the oral contract to purchase the stock not issued could not be enforced because of the statute of frauds.

Before the enactment of the sales act, G. L. c. 106, it was the law of this Commonwealth that a sale of corporation stock was a sale of "goods, wares, or merchandise" within the provisions of the statute of frauds. *Boardman* v. *Cutter*, 128 Mass. 388, 390. *Tisdale* v. *Harris*, 20 Pick. 9. *Baldwin* v. *Williams*, 3 Met. 365. Prior to the sales act decisions are to be found indicating that it is doubtful whether a contract for the sale of unissued stock is within the statute of frauds. *Meehan* v. *Sharp*, 151 Mass. 564, 566. *Berwin* v. *Bolles*, 183 Mass. 340, 342. G. L. c. 106, § 6 (1) provides that "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or more shall not be enforceable . . . unless some note or memorandum in writing of the contract or sale be signed by the party to be charged." Shares of stock in a corporation are in the nature of a chose in action. *Bellows Falls Power Co.* v. *Commonwealth*, 222 Mass. 51, 57, 58, and cases cited. We are not called upon to decide whether a contract to purchase unissued stock of a corporation is within this provision of the sales act, because, in our opinion, if such a contract is within the statute of frauds, the statute was fully complied with. The statement sent to the defendant on October 31, 1925 (Exhibit 11), which he signed and returned to the plaintiffs was a sufficient memorandum under this section of the statute. The certificates of stock had at this date been issued by the corporation and were in the plaintiffs' possession, although the seventy shares sold to the defendant were not segregated until a later date.

The fact that the memorandum does not indicate that the seventy shares were "participating" shares in the corporation, does not show that it was insufficient. The defendant in his admission of facts, in answer to one of the questions, admitted he had several talks with the plaintiffs' agent at which mention was made of the participating stock. The agent testified that the defendant was informed that he had been allotted seventy shares "of the 100 which he had agreed to take." There was also evidence that two confirmation slips had been sent to the defendant. The only shares to which reference was made in the conversations were the participating shares. The circumstances in the minds of the parties showed that the subject matter of the agreement was the participating shares. *Williams* v. *Smith*, 161 Mass. 248, 252. *Willett* v. *Smith*, 214 Mass. 494, 497. Read in the light of all the evidence the memorandum was a sufficient compliance with the statute. ,

3. The plaintiffs contend that there was an account stated between the parties as appears in Exhibit 11. The judge found there was no accounting together. It was said in *McMahon* v. *Brown*, 219 Mass. 23, 27, that "A stated account is an agreement between the parties entered into after an examination of the items by which a balance is struck in favor of one of them . . . . It is a final settlement arrived at after the allowance or disallowance of the irrespective claims." An account stated does not create a liability where none existed before; it merely determines the amount of a debt where liability already exists. *Chase* v. *Chase*, 191 Mass. 556. See *Rand* v. *Wright*, 129 Mass. 50, 51; *Tucker* v. *Columbian National Life Ins. Co.* 232 Mass. 224, 229; *Cavanaugh Bros. Horse Co.* v. *Gaston*, 255 Mass. 587, 590. The judge was right in deciding that there was no accounting between the parties. When Exhibit 11 was signed the stock had not been delivered to the defendant, and the seventy shares were not segregated until March 17 of the following year. The plaintiffs might refuse to deliver the stock to the defendant and to carry out the agreement. The exhibit showed the figures $3,535 and the statement "Long 70 Am. Brown Boveri." While the $3,535 was the total amount

of the price of the stock together with the balance due on the bond transaction, it was not the determination of a debt where liability already existed or a final settlement of the respective claims, and was insufficient to support a recovery on an account stated. The memorandum was evidence that the defendant was to have the seventy shares of stock at the price stated, but it was not an acknowledgment that he then owed this amount, nor a recognition that he owned the stock or that the plaintiffs then had the stock set apart for the defendant. There was no acknowledgment of an existing liability such as is required in an account stated. *Chace* v. *Trafford*, 116 Mass. 529, 532. *Rand* v. *Wright, supra.* An account stated "supposes a rendering of the account by the party who is the creditor, with a balance struck, and an assent to that balance, expressed or implied; and thus the demand is essentially the same as if a promissory note had been given for the balance." *Bass* v. *Bass*, 8 Pick. 187, 193.

4. There was no error in ruling that the plaintiffs' remedy was for damages caused by the defendant's refusal to accept and pay for the stock. It does not appear at what time the defendant refused to accept the stock, but it would seem from the amount found for the plaintiffs that the defendant refused on or about March 17, 1926, and during this month the market price of the stock was from about $40 a share to a low of about $30 a share. It was in evidence that the market price of the stock at the time of the trial was $15 a share. The plaintiffs being able and willing to perform could recover the damages caused by the defendant's breach. *Tufts* v. *Bennett*, 163 Mass. 398. *Houghton* v. *Furbush*, 185 Mass. 251. *Barrie* v. *Quinby*, 206 Mass. 259, 268. *F. W. Stock & Sons* v. *Snell*, 213 Mass. 449, 453.

The certificates of stock had not been delivered to the defendant and the plaintiffs could not recover the contract price. There was evidence that the defendant did not repudiate the agreement until the certificate of stock with draft attached was sent to the bank; that the plaintiffs received information of this fact on April 7, 1926. It was a question of fact for the judge to decide at what date the plaintiffs had notice of the defendant's refusal, and the measure of damages

were to be determined as of that date.   *Centennial Electric Co.* v. *Morse,* 227 Mass. 486, 490.   The plaintiffs could not delay and place the loss on the defendant if the market price of the stock was going down.   *Centennial Electric Co.* v. *Morse, supra.   Collins* v. *Delaporte,* 115 Mass. 159, 162. *Hall* v. *Paine,* 224 Mass. 62, 65.   The defendant's evidence tended to show that he refused to receive the stock in the autumn of 1925 when the stock was selling in the market at $53 a share.   But this evidence was contradicted.   An issue of fact was raised on this point and its determination was for the trial judge.

*Plaintiffs' exceptions overruled.*
*Defendant's exceptions overruled.*