CHARLES S. BAZIRGAN *vs.* ARNOLD AND SEARS, INCORPORATED.

ARNOLD AND SEARS, INCORPORATED, *vs.* CHARLES S. BAZIRGAN.

Suffolk.   March 9, 1931. — April 1, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Stockbroker.*

At the trial together of two actions, the first against a stockbroker under G. L. c. 137, § 4, to recover money paid the defendant, and the second by the stockbroker against the customer for a balance alleged to be due under the contract between them, the defence to the second action being that the transaction was in violation of that statute, there was evidence for the stockbroker that, upon his advice, the customer agreed to maintain a certain margin and gave orders to purchase certain shares of stock; that the stockbroker actually purchased the shares and carried them for the customer's account, sending him confirmation memoranda thereof; that the customer made payments to the stockbroker from time to time; that the customer "never said or did anything which indicated to him that the . . . [customer] did not wish to purchase the stocks for which . . . [he] had given orders"; and that, the market having declined and the customer not having paid to the stockbroker additional margin which he promised to pay, the stockbroker sold the shares for a sum which, with the sums already paid by the customer to the stockbroker, was insufficient to pay the amount paid for the shares by the stockbroker.   The customer testified that the stockbroker stated to him before he ordered the stock that "It's a gamble"; that he did not intend or wish that the stockbroker should buy the stock for him; and that he supposed, until the shares were sold, that the stockbroker was "bucketing" the orders and was not carrying the shares for him.   The trial judge denied a motion by the customer in each action that a verdict be ordered in his favor.   The jury found for the stockbroker in each action.   Upon exceptions by the customer, it was *held*, that, there being evidence that the stockbroker did not know of the customer's intention that there should

not be an actual purchase of the shares and evidence that the stockbroker actually purchased them, the customer's motion properly was denied in each action.

Rulings, requested by the customer in the action by him and based upon the contention that the defendant had overcharged him for the shares, were irrelevant to the plaintiff's cause of action based on the theory that there had been merely a nominal sale in violation of G. L. c. 137, § 4, and they properly were refused by the trial judge.

CONTRACT against a stockbroker under G. L. c. 137, § 4. Writ dated March 26, 1926.

The plaintiff's declaration, as amended, was as follows:

"Count 1. And the plaintiff says that on or about the dates set forth in the account hereto annexed he contracted to buy from the defendant certain securities more particularly set forth in the said account hereto annexed; that the plaintiff intended at the said times and dates that there should be no actual sale to him by the defendant, and the defendant had reasonable cause to believe that the said intention existed; and the defendant did not make, on account of the said contract an actual purchase of the said securities, or a valid contract therefor; and the defendant owes the plaintiff the sum of $2,522, with interest, as specified in the account hereto annexed.

"Count 2. And the plaintiff says that the defendant owes him the sum of $2,522, with interest, for money had and received by the defendant to the plaintiff's use, as per the account hereto annexed.

"Count 3. And the plaintiff says that the defendant owes him the sum of $2,522, with interest, for money had and received by the defendant to the plaintiff's use. For specification to this count the plaintiff says that he deposited with the defendant, as margin on stock speculation transactions, cash and securities amounting to the above sum on the representations of the defendant that it would speculatively order for the defendant one hundred shares of General Gas and Electric Stock and one hundred shares of National Cash Register Company, Common A stock and speculatively charge the plaintiff therefor whatever price the defendant ordered them for for the plaintiff's speculative account, not exceeding the market price at

the time of such ordering, but in violation of the defendant's fiduciary relation as a broker for the plaintiff, the defendant charged the plaintiff the sum of $6,167.50 for the said General Gas & Electric Stock, whereas it should have charged the plaintiff not more than the sum of $5,950; and for the said Cash Register stock the defendant charged the plaintiff the sum of $5,200, whereas it should have charged the plaintiff not more than the sum of $4,950.

"ACCOUNT ANNEXED.

Arnold & Sears, Inc.,
         To Charles S. Bazirgan, Dr.

Payments made on margin account on 100 shares of National Cash Register Company, Common A Stock and 100 shares General Gas and Electric Common Stock: —

1925

| | | | | |
|---|---|---|---|---|
| Item 1. | Nov. 5. | Cash | . . . . | $1500.00 |
| Item 2. | Dec. 9. | Cash | . . . . | 450.00 |

1926

| | | |
|---|---|---|
| Item 3. | Mar. 2. Deposit of all shares General Gas and Electric Stock | 572.00 |
| | | $2522.00 |
| Item 4. | Interest on item No. 1 to date of writ . . . . . . | 35.00 |
| Item 5. | Interest on Item No. 2 to date of writ . . . . . . | 7.75 |
| | | $2564.75" |

Also an action of

CONTRACT by the stockbroker against Bazirgan, to recover a sum of money which it alleged was due under the marginal contract between the parties. Writ dated March 27, 1926.

The actions were tried together in the Superior Court before *Walsh*, J. Bazirgan testified that the salesman of the stockbroker stated to him at their first interview that "It's a gamble" and that he would make a lot of money; that he

did not wish or intend that any one should buy stock for him; and that he supposed, from the time he gave his first order until the time he was notified of the sale of his shares, that the stockbroker was "bucketing" the orders and was not carrying the shares for him. Other material evidence, and rulings requested by Bazirgan as the plaintiff in the first action and refused by the judge are stated in the opinion. The judge denied a motion by Bazirgan as the plaintiff in the first action and the defendant in the second action that verdicts be ordered in his favor. The jury found for the defendant in the first action, and for the plaintiff in the second in the sum of $732.05. Bazirgan alleged exceptions in both actions.

*J. H. Duffy,* for Bazirgan.

*S. P. Sears,* for Arnold and Sears, Incorporated.

PIERCE, J. These are cross actions of contract arising from the same facts. They were tried together to a jury. At the close of all the evidence and before arguments the defendant in the case of Arnold and Sears, Incorporated, against Bazirgan presented a motion "that the court order a verdict for the defendant." The judge denied the motion and the defendant duly excepted. The plaintiff in the case of Bazirgan against Arnold and Sears, Incorporated, at the close of all the evidence presented a motion "that the court order a verdict for the plaintiff." This motion was denied and the plaintiff duly excepted. At the close of all the evidence and before argument, the plaintiff Bazirgan, in writing, requested the judge to give the following instructions: "1. If the defendant purported to act as the plaintiff's broker and the defendant charged the plaintiff, without the plaintiff's knowledge, a larger sum for the 100 shares of General Gas and Electric Co. stock than the defendant paid or contracted to pay for it, the plaintiff is entitled to repudiate any agreement in regard to this stock. 2. If the defendant charged the plaintiff a higher price for the 100 shares of General Gas & Electric Company stock than the plaintiff agreed to pay, it is evidence of the defendant's liability. 3. If the defendant purported to act as the plaintiff's broker and the defendant charged the plaintiff, without the plain-

tiff's knowledge, a larger sum for the 100 shares of National Cash Register A Common stock than the defendant paid or contracted to pay for it, the plaintiff is entitled to repudiate any agreement in regard to this stock. 4. If the defendant charged the plaintiff a higher price for the 100 shares of National Cash Register A Common stock than the plaintiff agreed to pay, it is evidence of the defendant liability. 5. If the plaintiff's order for 100 shares of the General Gas and Electric stock was given to the defendant with the understanding that the plaintiff would be charged for the stock no more than the defendant paid for it plus a commission, then the fact that the defendant charged the plaintiff more for the said stock than the defendant paid for it is evidence that the stock was not purchased for the plaintiff's account. 6. If the defendant acted as the plaintiff's broker to purchase the said 100 shares of General Gas and Electric stock and the defendant was to charge the plaintiff a commission on the said purchase, then in the absence of a special agreement to the contrary, a charge by the defendant to the plaintiff for more than the defendant paid for the said stock is evidence that the said purchase, if made was made on the defendant's own account, and not on the plaintiff's account." The judge declined to give any of these requests and the plaintiff duly excepted. No exceptions were saved to the charge. The jury found for the plaintiff in the case of Arnold and Sears, Incorporated, against Bazirgan and for the defendant in the case of Bazirgan against Arnold and Sears, Incorporated.

The bill of exceptions contains all the material evidence relating to the questions raised by Bazirgan's exceptions in the two cases. It was agreed that the bills of exceptions of Bazirgan both as defendant and as plaintiff might be consolidated and considered as if he had filed separate bills. Arnold and Sears, Incorporated, will hereinafter be called the plaintiff, and Bazirgan will be called the defendant.

The plaintiff's action was brought to recover a balance of money allegedly due to it, as an investment broker, upon a marginal contract with the defendant. The defence relied upon by the defendant in his answer was that the transac-

tions were in violation of G. L. c. 137, § 4. The action of the defendant was in three counts for the same cause of action, and was to recover the amounts paid the plaintiff in the course of these transactions, alleging that they were in violation of the statute above cited.

The evidence in its aspect most favorable to the plaintiff warranted the jury in finding the following facts: An employee of the plaintiff, one Bryning, on November 4, 1925, had a conversation with the defendant at the defendant's place of business. He advised the purchase of General Gas and Electric stock as being a very good stock. Bryning knew at that time and told the defendant "what the market was approximately and what the market had been." He told the defendant "he would accept a marginal account." The defendant said a thirty per cent margin was satisfactory to him and thereupon ordered "one hundred shares at the market." Bryning gave the order to the plaintiff. On November 4, 1925, the plaintiff sent the defendant a confirmatory memorandum, the material part of which reads: "We confirm that we have this day Bought for your account 100 shs General Gas & Electric A @ 61½ for regular delivery . . . . STATEMENT Amount 100 shs. Description General Gas & Elec. A Price 61½ Commission 17.50 Total 6167.50" On November 6, 1925, the defendant sent the plaintiff a check for $1,500 which the plaintiff collected.

In January, 1926, Bryning saw the defendant and suggested that he buy some National Cash Register Company common A stock which the plaintiff would offer to him at $52 per share. The defendant gave the salesman an oral order for one hundred shares. After returning to the plaintiff's office the salesman within an hour called the defendant and told him that the selling price that day was $50 a share; that he had charged him too much; that the price he gave him, $52 a share, would have to stand if the defendant wanted to keep the order as it was then selling at $54 on the street. The defendant in reply said he would prefer to let it stand. Thereupon on January 6, 1926, the plaintiff sent, and the defendant received, a confirmatory

letter which reads in its part material to the issue as follows: "We take pleasure in confirming sale to you this day through our Mr. Bryning, for delivery when, as, and if issued of 100 shares National Cash Register Company, Common A Stock @ 52 net statement of which will be sent in due course." As appears by the record a statement was sent by the plaintiff to the defendant on January 11, 1926, the material part of which reads: "Amount 100 shs. National Cash Register A Common @ 52 net $5200." On February 25, 1926, the plaintiff sent the defendant the following letter: "On January 11th we sent you a statement covering a sale to you of 100 Shs. National Cash Register A Common stock. As this has probably slipped your mind, we are reminding you in order that you may send us a check to cover this statement." The salesman testified and the jury could find that when the sale was made nothing "was said about margin or payment for the stock." On December 9, 1925, the defendant wrote the plaintiff as follows: "Enclosed please find check of $450. Will you kindly purchase ten shares of General Gas & Electric stock for my rights of 100 shares you are holding for me. Will you be kind enough to put same in the name of Nevart N. Bazirgan. I shall appreciate it very much if I could have the certificate before Christmas."

The salesman testified, in substance, and the jury could find that early in February, 1926, he asked the defendant for more margin to cover his account; that he understood the margin was to cover the National Cash Register stock and the General Gas and Electric stock; and that he knew that the sale of the National Cash Register stock was an outright sale. Sears, the vice president and treasurer of the company, testified, in substance, and the jury could find, that on receipt of the orders purporting to come from the defendant through the salesman the plaintiff made an actual purchase of one hundred shares of General Gas and Electric stock and likewise a purchase of one hundred shares of National Cash Register stock; that the "defendant never said or did anything which indicated to him that the defendant did not wish to purchase the stocks for which

the defendant had given orders." The evidence warranted the further specific finding that after the purchase of the stocks by the plaintiff and until they were sold on the defendant's account they were in the control and subject to the direction of the plaintiff and were carried on its books to the credit of the defendant. The evidence warranted the further finding that Sears had a talk with the defendant in reference to the whole account, that the defendant gave the plaintiff in consequence thereof an additional margin of $400 or $450 cash, ten shares of General Gas and Electric stock and promised to send more. They could further find that between March 20 and March 24, 1926, the market was in a bad condition, that the plaintiff frequently tried to communicate with the defendant, and, as a result of the market, finally sold the defendant's account on the New York curb exchange where the stocks were listed.

On March 24, 1926, the plaintiff sent the defendant a letter which was introduced in evidence and reads as follows: "Enclosed herewith you will please find statements on which we have sold 111 shs General Gas and Electric Class 'A' Stock 100 shs National Cash Register Stock As your account did not have sufficient collateral to be carried by us, we were obliged to sell it out as we instructed you several times over the telephone and also in our Western Union wire dated March 20th. Over the telephone you agreed to be in our office at ten o'clock this morning to fix your account up. As you were not here we called you up and you said you would be in in a half hour. We called you up again at twelve o'clock and also at half past twelve but as you had not come in, we were therefore obliged to sell out the securities. At the prices at which we sold the stocks there is a balance due us of $595.16 which you will kindly remit to us." On the evidence this letter was interpreted to mean "that after . . . [the plaintiff] had liquidated the defendant's account and had applied to the indebtedness the $1,500 which . . . [the defendant] had originally deposited, the check for $400 or $450 plus the 11 shares of General Gas & Electric Stock, . . . the stocks were sold for $595.16 less

than that"; the "actual loss by reason of this transaction was $595.16."

On the above facts it is plain the motion for a directed verdict for the defendant was denied rightly. The evidence was plenary that the plaintiff did not know or have cause to believe that the defendant when he gave the order to the plaintiff's salesman did not intend that there should be an actual purchase or sale of the stock. Moreover, the evidence was ample that the plaintiff made an actual purchase of the stocks in accordance with the terms of the order given its salesman that they should be sold to the defendant at the market. *Zembler* v. *Fitzgerald*, 234 Mass. 236. *Golden* v. *Proctor*, 266 Mass. 407.

The motion for a directed verdict for the plaintiff in the action entitled Bazirgan against Arnold and Sears, Incorporated, was denied rightly for the reason above stated; in the other action a verdict could not rightly have been directed for the defendant. If the fact of Bazirgan's intention that there should be no actual purchase or sale was in doubt, or, if plain, if the company's knowledge of such intention was not incontrovertibly proved, obviously there was a question of fact to be submitted to the jury.

The short answer to the requests for rulings is that they were denied rightly because not applicable to the issue raised by the declaration and the several counts. They are evidently framed on the theory that the order given by Bazirgan was based on the statement of the salesman: "You don't have to invest any such amount. It's a gamble . . . a sure gamble, that he had received information through one of the members of the firm . . . that before . . . [he] invested another dollar . . . [he would] make ten or fifteen thousand dollars." If it was a "gamble" Bazirgan's only redress was by G. L. c. 137, § 4. He had none at common law. *Harvey* v. *Merrill*, 150 Mass. 1. Assuming he had an intention that the stocks should not be actually purchased or sold and Arnold and Sears, Incorporated, had actual or constructive knowledge of his intention, and that there was a repudiation of the agreement by him, it is difficult to see the relevancy of the fact,

if proved, that Arnold and Sears, Incorporated, overcharged him on the account of the nominal sale, the measure of damages in such a case under the statute being the amount of any payments made or the value of anything delivered on account of the unlawful agreement.   *Wall* v. *Metropolitan Stock Exchange,* 168 Mass. 282.   *Lyons* v. *Coe,* 177 Mass. 382.

*Exceptions overruled.*