SAVOY FINANCE CO. *vs.* ENRICO DE BIASE & another.

Suffolk.    November 17, 1932. — January 4, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Contract,* Validity, Construction, Consideration. *Wagering Contract. Evidence,* Presumptions and burden of proof. *Bills and Notes.*

At the hearing in a municipal court of an action by the payee against the maker of a promissory note for $500, it appeared that the defendant had been adjudicated a bankrupt while owing the plaintiff $500 upon a promissory note secured by a chattel mortgage; that after the adjudication the parties made a contract under seal in which were recited the above facts and that the defendant desired to borrow from the plaintiff an additional $500, and the following: "Now Therefore, in consideration of . . . [the plaintiff] making said $500 additional loan to the . . . [defendant], it is understood and agreed" that the defendant "is to cause to be opened a so-called margin account . . . to be carried in the name of . . . [the plaintiff's attorney] on a margin basis of not less than 50%; said . . . [attorney] to buy such securities as said . . . [defendant] may direct upon the aforesaid basis and to sell the same when in the opinion of said . . . [defendant] and said . . . [attorney] a sale ought to be made; said account and securities to be in trust for the benefit of said . . . [defendant] and as security for the note hereinbefore mentioned." The plaintiff thereupon paid to the defendant $500 which he delivered to the attorney, and the defendant gave to the attorney two notes for $500 each payable to the plaintiff, one of which was the basis of the action. The defendant relied only on defences of want of consideration, payment, and illegality of the note. The plaintiff introduced the note and

rested.   The defendant's evidence was in substance that the contract under seal was made after several talks with the plaintiff and a statement by him "that the stock market was active and if the plaintiff was willing to loan him $500 with which to 'play the market,' he would try to make sufficient money to repay the amount owed the plaintiff at the time of his bankruptcy"; and that the understanding with the plaintiff was that his sole purpose in borrowing the money and buying stocks on margin was to make money by speculating on the rise and fall of market prices so as to enable him to repay the plaintiff out of the profits.   There was evidence that the account made a profit of more than enough to pay one of the notes; that that note was paid from such profit, that the margin deposit still was left with the broker, and that in subsequent transactions it was wiped out.   In specific findings as to the contract under seal and its performance, the judge found: "This arrangement was carried out and as a result of buying and selling on margin, with actual purchases and sales of securities (as was intended by both parties at all times) the account . . . [realized the profit which was used as above stated] . . . . Thereafter the speculative account apparently lost money and disappeared."   He further found that the note which was the basis of the action had not been paid, and found for the plaintiff.   Upon an appeal by the defendant from an order of the Appellate Division dismissing a report, it was *held*, that

(1) The burden of proving the note to be illegal was upon the defendant;

(2) The contract under seal did not in terms contemplate any violation of law;

(3) The judge was not required to believe the defendant, and was not required as a matter of law to find the contract and the note illegal;

(4) The judge was not required as a matter of law to find that both notes were supported by a single consideration and were paid when the amount of that consideration was paid to the plaintiff;

(5) The findings by the judge were warranted.

CONTRACT against Enrico and Concettina De Biase as makers of a promissory note payable to the plaintiff in the principal sum of $500, bearing interest at two per cent per month and providing that, if it were placed in the hands of an attorney for collection, a reasonable attorney's fee should be paid.   Writ in the Municipal Court of the City of Boston dated March 14, 1931.

The answer of the defendants and a waiver of a part thereof are described in the opinion.

In the Municipal Court, the action was heard by *Putnam*, J.   Material evidence is stated in the opinion.   At the

close of the evidence, the defendant made the following, among other, requests for rulings:

"6. If a person contracts to buy on margin certain stocks, having no intention of performing said contract by the actual delivery and receipt of said stocks and the payment of the price therefor, such contracts are wagering contracts and illegal.

"7. If the plaintiff made said loan for the purpose of enabling the defendant Enrico De Biase to make contracts for the purchase of stocks on margin, and the plaintiff knew or had reasonable cause to believe that said defendant had no intention of performing said contracts by the actual delivery and receipt of said stocks and the payment of the price therefor, the plaintiff cannot recover."

"9. A note, the consideration for which is money knowingly lent for wagering, is void.

"10. The consideration, if any, for both notes dated February 27, 1930, was a loan of $500.

"11. Under the provisions of G. L. (Ter. Ed.) c. 140, § 90, the payment to the plaintiff of $562.80 on or about April 28, 1930, discharged the loan for which the note in suit was given.

"12. Upon all the evidence the plaintiff cannot recover, because

    (a) The note is void for illegality.
    (b) The loan for which the note was given has been fully paid and discharged."

The disposition of the above requests and material findings of fact by the judge are stated in the opinion. There was a finding for the plaintiff in the sum of $682. A report to the Appellate Division was ordered dismissed. The defendant appealed.

With respect to his requests numbered 10, 11 and 12 (b), the defendants in this court contended in substance that the question raised by the request numbered 10 was not solely of fact, as stated by the trial judge, but was of law in construction of the contract in writing described in the opinion; that that request should have been given, and

that, upon its being given, requests numbered 11 and 12 (b) necessarily should have been given.

Material portions of G. L. (Ter. Ed.) c. 140, § 90, are as follows:

"A loan of less than one thousand dollars shall be discharged upon payment or tender by the debtor of the principal sum actually borrowed, with interest at the rate of eighteen per cent per annum from the time said money was borrowed, and a sum not exceeding five dollars for the actual expenses of making and securing the loan; but the lender shall be entitled to interest for six months at said rate if the debt is paid before the expiration of that period. . . ."

*J. C. Coughlin*, for the defendants.     ·

*J. H. Cinamon*, for the plaintiff, submitted a brief.

PIERCE, J. This is an action of contract in which the plaintiff seeks to recover upon a promissory note as set forth in its declaration. The answer is a general denial, payment, want of consideration, and the further answer that the note was void for illegality. At the trial the defendants waived so much of their answer as contained a denial of the genuineness of the signature and denial of the existence of the corporation. The plaintiff offered the note in evidence and rested. "The parties agreed to leave the question of counsel fee to the court, without offering any evidence on that point."

The case was tried in the Municipal Court of the City of Boston. The report contains all the evidence material to the questions reported. At the trial the defendants presented twelve requests for findings and rulings. On these requests the trial judge ruled that those numbered 1, 2, 3, 4, 5, 8 and 10 are requests for findings of fact and refused to pass upon them. He ruled that requests numbered 6, 7 and 9 are not applicable to the facts found by him and for that reason denied them. He denied requests numbered 11 and 12 and found for the plaintiff. In the Appellate Division the report was dismissed and the case is before this court on the appeal of the defendants from the decision of the appellate court.

The evidence of the defendants discloses that Enrico De Biase (hereafter referred to as the defendant), the maker of the note in action, on January 31, 1930, was adjudicated a bankrupt; that at that time he was indebted to the plaintiff in the sum of $500 on a promissory note, dated June 7, 1929, secured by a chattel mortgage of the stock and fixtures of his barber shop; that shortly after said adjudication he was requested by the president of the plaintiff corporation to pay the amount due the plaintiff at the time of the said adjudication, and he said he could not pay the note; that after several talks he stated "that the stock market was active and if the plaintiff was willing to loan him $500 with which to 'play the market,' he would try to make sufficient money to repay the amount owed the plaintiff at the time of his bankruptcy"; that subsequently, on February 27, 1930, an agreement under seal was executed by and between the plaintiff and the defendant. This agreement is referred to in, and attached to, the report. It recites the indebtedness of the defendant to the plaintiff in the sum of $500 upon a promissory note; that the defendant was adjudged a bankrupt on January 31, 1930; that the defendant desires to borrow from the plaintiff an additional sum of $500; and it contains the statement: "Now Therefore, in consideration of the Savoy Finance Co. making said $500.00 additional loan to the said Enrico De Biase, it is understood and agreed" that "Enrico De Biase is to cause to be opened a so-called margin account . . . to be carried in the name of said Joseph H. Cinamon on a margin basis of not less than 50%; said Joseph H. Cinamon to buy such securities as said Enrico De Biase may direct upon the aforesaid basis and to sell the same when in the opinion of said De Biase and said Cinamon a sale ought to be made; said account and securities to be in trust for the benefit of said De Biase and as security for the note hereinbefore mentioned."

The evidence of the defendants tended to prove that pursuant to the executed agreement the plaintiff handed to the defendant a check for $500 which the defendant in turn delivered to Mr. Cinamon, the attorney for the plain-

tiff and trustee named in the agreement; that at the same time the defendant, pursuant to the agreement, delivered to Mr. Cinamon two notes each for $500 and each dated February 27, 1930; that Mr. Cinamon opened an account with a broker for the purchase and sale of stocks on margin, and, as directed by the defendant, ordered the purchase of two lots of stocks which were later sold by Mr. Cinamon with the consent of the defendant at a profit of $621 and $137.30; that on April 28, 1930, the day of the sale of the last lot, Mr. Cinamon withdrew from deposit with the broker $616.50, which was the net profit arising from both sales, less certain payments to the defendant by the broker and a deduction of $50 on an old account; that this left more than the original deposit of $500 to the credit of the defendant or Mr. Cinamon in the margin account. The testimony further tended to show that on the last mentioned day Mr. Cinamon, with the consent of the defendant, purchased one hundred shares of Appalachian Gas stock; that the stock declined in the market and the broker made demands for additional margin; that Mr. Cinamon informed the defendant of the broker's demands, but the defendant did not supply the requested funds and the broker sold out the stock at a loss on June 18, 1930, leaving a credit balance of $7.49, as shown in a statement of the account annexed to the report. There was further evidence that on April 29, 1930, the day after the withdrawal of $616.50 from the margin account, Mr. Cinamon paid the plaintiff the sum of $562.80 and turned over the balance of $53.70 to the defendant; and that the payment of $562.80 to the plaintiff was sufficient to pay in full the principal amount of one of the notes, made and delivered in pursuance of the agreement, and the interest on both notes up to that date.

By agreement of counsel it is stated in the report that, after the account was sold out by the broker, an action was brought by the plaintiff on the first of the notes required by the agreement. Respecting this action and its final disposition, the trial judge, presumably from the

records of the Municipal Court, which were in evidence, stated that a judgment for the defendant was entered, the judge finding that the note had been paid as a consequence of Mr. Cinamon's having paid the plaintiff the $562.80 above referred to; that the case did not go to the Appellate Division and judgment was entered for the defendants.

At the trial in the instant case the defendant testified "that at the time the note here in suit was given, shortly after his bankruptcy, he was without funds to take up and pay for any stocks purchased by Mr. Cinamon on a fifty per cent margin and he had no intention of so doing. . . . He further testified that his sole purpose in borrowing the money and buying stocks on margin was to make money by speculating on the rise and fall of market prices so as to enable him to repay out of the profits, the note owed the plaintiff at the time of his bankruptcy, and that this was the understanding with the plaintiff and the purpose of the loan"; that in none of these transactions were any certificates of stock delivered by the broker either to the defendant or to Mr. Cinamon. At the close of the evidence and before final argument, the defendants made the requests for findings and rulings previously referred to. The denial of requests numbered 11 and 12 presents the substantial question at issue.

The trial judge filed a memorandum of his findings and rulings. His rulings are above shown. Aside from inferential findings, he made a specific finding in respect to the agreement of February 27, 1930, as follows: "This arrangement was carried out and as a result of buying and selling on margin, with actual purchases and sales of securities (as was intended by both parties at all times) the account (which was in the name of Mr. Cinamon) realized by April 28, 1930, a profit of not less than $636.50. On that day, by agreement, $50 of this profit was transferred to a personal account of the defendant and $616.50 was paid to Mr. Cinamon. The latter paid $562.80 to the plaintiff in payment of the $500 note signed by the four people with interest and paid $53.70 to the defendant. Thereafter the specula-

tive account apparently lost money and disappeared." The trial judge further found that the note on which the case now before him was brought has not been paid.

The defendants posit their demand for a reversal of the decision of the Appellate Division upon the proposition that the trial judge erred in his refusal to give requests numbered 11 and 12, (1) "Because the note was void for illegality, in that the contract provided a loan for a wagering purpose"; and (2) "Because the defendant's liability had been discharged by operation of law, in that the contract recited that the consideration for both notes was the new loan of $500, and that loan was discharged under G. L. c. 140, § 90, by the payment of $562.80 on April 28, 1930."

The plaintiff concedes that a contract for the purchase and sale of securities or other commodities, when all parties intend that no actual purchase or sale shall be made but when the time of performance arrives settlement shall be made by payment of differences between the market price and the contract price, is a wagering contract, illegal and void.   This admission is required by *Northrup* v. *Buffington*, 171 Mass. 468, *Lyons* v. *Coe*, 177 Mass. 382, 383, 384, *Rice* v. *Winslow*, 182 Mass. 273, 275, *Beers* v. *Wardwell*, 198 Mass. 236, 239, and *Bazirgan* v. *Arnold & Sears, Inc.*, 275 Mass. 207, 215–216.   It also concedes rightly that even the purchase of securities or other commodities may not save the contract from the taint of illegality if the contract be such that delivery shall never be required but the purchases and sales shall be set off against each other and the principal receive the profits or make good the losses.   *Harvey* v. *Merrill*, 150 Mass. 1.   *Barnes* v. *Smith*, 159 Mass. 344, 347.   *Gibney* v. *Olivette*, 196 Mass. 294.   *Bazirgan* v. *Arnold & Sears, Inc.*, 275 Mass. 207.   The plaintiff further admits that no one knowingly participating in a transaction intended to accomplish a purpose forbidden by law can bring an action and recover for any cause directly connected with the illegality.   *Foster* v. *Thurston*, 11 Cush. 322, 323. *Haller* v. *Workingmen's Co-operative Bank*, 263 Mass. 37, 38, 39.   See also *Gibney* v. *Olivette*, 196 Mass. 294, 295, where it

is said that "one who has advanced or lent money, to be used in an illegal transaction . . . is an aider and abettor of a wrong . . . remediless if he seeks to recover the amount advanced." The defendants concede that buying stock on margin is not *per se* illegal.

The fact that stock so bought is not delivered at any time by the broker, as here, was evidence of greater or less weight that the parties to the purchase and sale were concerned merely with speculative gains or losses, depending upon the rise and fall of the stock market. In view of the special finding of the trial judge, quoted in full, the only question here to be decided is, Does the contract printed in the report, read in the light of the circumstances present at its execution, import in the reasonable construction of its terms an intention by the parties to it to engage in a contract of wager prohibited by the common law or by statute? The burden of proof to establish illegality is upon the defendants. We are of opinion that the contract in terms does not contemplate any violation of law. The trial judge to arrive at the conclusion reached by him must have found that the testimony of the defendant was not credible. His finding was one of fact, arrived at after seeing the only witness, the defendant, and hearing his testimony. His conclusion cannot be said to have been wrong. Rejecting the testimony of the defendant in support of his contentions and answer of illegality in the contract and in the performance of it, we think that the finding of the trial judge on the evidence was right. We find nothing in the contention of the defendants that the case falls within the provisions of G. L. (Ter. Ed.) c. 140, § 90, nor in their contention that the note in suit has been paid.

*Order "Report dismissed" affirmed.*