FREDERICK L. MILLIKEN & another *vs.* EDWIN M. WARWICK.

Suffolk.    February 8, 1940. — June 3, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Pleading, Civil*, Answer. *Practice, Civil*, Discretionary control of evidence; Auditor: findings; Exceptions: whether error harmful; Charge to jury. *Contract*, Implied.

An answer to a declaration in an action by stockbrokers against a customer for money paid for securities purchased on his orders was not insufficient under G. L. (Ter. Ed.) c. 231, § 28, in that it stated merely that, if there were such employment, it "was with the intent by both parties that no actual purchases or sales should be made" and that, in substance, the transactions between the parties were illegal.

No error appeared in a ruling at a trial declining to permit the plaintiff to introduce in his direct case evidence in support of allegations in a replication filed by him to an answer setting up an affirmative defence; the order of proof was within the judge's discretion.

In an action by a stockbroker against a customer on an account stated to recover a balance due in executing purchase and sale orders for the defendant over a period of seven years, evidence that the defendant made no objection known to the plaintiff as to the correctness of statements of his account sent him monthly during that period or of statements sent him as to each transaction as it occurred warranted a finding that the defendant had agreed to the correctness of the statements and made improper the ordering of a verdict for the defendant.

On evidence consisting of both the report of an auditor and other evidence, instructions to the jury that the report was "merely a piece of evidence . . . like any other evidence" and they might "accept it or reject it in whole or in part" as they saw fit, were error where none of the other evidence and no subsidiary finding of the auditor justified a finding contrary to a certain determinative fact found by the auditor.

Instructions repeatedly stressing the importance of a certain issue of fact and erroneous in leaving that issue to the jury because in the circumstances it had been conclusively determined in the plaintiff's favor by an auditor's finding were prejudicial to the plaintiff and required the sustaining of exceptions thereto after a verdict for the defendant although on other grounds the verdict might have been warranted even with that issue determined by the jury in the plaintiff's favor.

CONTRACT. Writ in the Superior Court dated June 11, 1935.

The first count of the plaintiffs' declaration was on an account stated. In it they alleged in substance that they had been employed by the defendant to execute orders for the purchase and sale of securities, as shown by "Exhibit A" annexed; that in the period August 1, 1927, to July 1, 1934, they rendered the defendant a statement respecting each order executed, and monthly statements of the defendant's account; that the defendant admitted and acknowledged the statements to be correct and "on numerous occasions promised to pay the plaintiffs the sums due them as shown by said monthly statements"; and that the defendant was liable "on the account stated, and as shown by said Exhibit A as of July 1, 1934," with interest from that date. The second count of the declaration was for the same sum and interest "as set forth and described in the account annexed as Exhibit A."

A demurrer to the amended answer was overruled by *Pinanski*, J., and the plaintiff appealed. The trial on the merits was before *Morton*, J., who ordered a verdict for the

defendant on the first count of the declaration. The jury found for the defendant on the second count, and found for the defendant as plaintiff on a declaration in set-off. The plaintiffs alleged exceptions.

*P. H. Kelley*, for the plaintiffs.

*W. R. Bigelow*, (*H. F. Wood* with him,) for the defendant.

Cox, J. This is an action of contract in which the plaintiffs, commission brokers, seek to recover for money paid on the defendant's account for securities which, they allege, they purchased for him upon his orders. The first count of the declaration is upon an account stated, and the second is upon an account annexed. The trial judge ordered a verdict for the defendant on the first count and the jury found for him on the second.

The defendant was allowed to amend his answer. The plaintiffs' demurrer to the amended answer (see G. L. [Ter. Ed.] c. 231, §§ 15, 17; *Montague* v. *Boston & Fairhaven Iron Works*, 97 Mass. 502) was overruled, and the plaintiffs appealed.

1. The demurrer was rightly overruled. The amended answer alleges that "if the plaintiffs shall prove that they were employed by the defendant as brokers to make purchases or sales of securities for him as claimed by the plaintiffs in their declaration, said employment was with the intent by both parties that no actual purchases or sales should be made," and that, in substance, the transactions between the parties were illegal. The ground of demurrer that has been argued is that these allegations are insufficient in law in that they fail to state the facts necessary to constitute a defence to the plaintiffs' action as required by G. L. (Ter. Ed.) c. 231, § 28, which provides, in part, that an answer shall state clearly and precisely each substantive fact intended to be relied upon in avoidance of the action. It is settled that the plain meaning of these words of the statute is that the facts intended to be relied upon shall be averred positively. *Cassidy* v. *Farrell*, 109 Mass. 397. *Lewis* v. *Russell*, 304 Mass. 41, 43–44, and cases cited. The precise contention of the plaintiffs is that the demurrer should be sustained for reasons stated in

cases like *Cassidy* v. *Farrell,* 109 Mass. 397, *Suit* v. *Woodhall,* 116 Mass. 547, *Jackman* v. *Doland,* 116 Mass. 550, *Caverly* v. *McOwen,* 123 Mass. 574, 577, and *Mountford* v. *Cunard Steamship Co. Ltd.* 202 Mass. 345, 348. But it is to be observed that in those cases the language of the answers was to the effect that if the plaintiff proved certain facts, then the defendant would show certain facts, or that certain facts "will also appear," or that he "will offer evidence tending to prove" certain facts, in each instance, in defence of the action. In *Jewett* v. *Locke,* 6 Gray, 233, the plaintiff contended that the answer set up two inconsistent defences. The answer denied the allegations of the plaintiff's declaration to the effect that the plaintiff had been twice arrested for the same cause of action, and then went on to say that if "it were so, the second arrest was made necessary and legal by reason of certain acts of the plaintiff, which it states." It was held that there was no legal inconsistency between the parts of this answer, much less distinct and inconsistent defences, and that the answer, in effect, said to the plaintiff, "If you were twice arrested for the same cause of action, (which we deny,) the arrests were not, under the circumstances, illegal. If what you say is true, it is not the whole truth, and, in the light of that, the acts charged were justifiable" (page 235), and that the facts stated in the answer tended to show that there never existed a cause of action because there was no false or illegal imprisonment or detention. See *Sargent* v. *Stetson,* 181 Mass. 371, 374; *Attorney General* v. *Pelletier,* 240 Mass. 264, 305; *Bremner* v. *Hester,* 258 Mass. 425, 426. The case at bar is distinguishable from the cases upon which the plaintiffs rely, and to which reference has been made, and the amended answer is not open to the objection that has been argued.

2. The plaintiffs filed a replication to the amended answer. See G. L. (Ter. Ed.) c. 231, § 34. The trial judge declined to permit them to introduce evidence in support of the replication as a part of their direct case. It does not appear that the evidence was offered at any later stage of the trial. There was no error. The order of proof was

within the discretion of the trial judge. *Dean* v. *Vice*, 234 Mass. 13, 17. *Sullivan* v. *Brabason*, 264 Mass. 276, 284.

3. The plaintiffs excepted to the direction of a verdict for the defendant on the first count of the declaration, which was upon an account stated. There was evidence that in the usual course of business a monthly statement of the defendant's account was sent to him from August 1, 1927, until some time in 1935. The statement of June 1, 1935, showed a cash balance due from the defendant and a credit of certain shares of stock. The auditor, whose report was in evidence, found that, during the entire period from 1927 to 1935, the defendant made "no objection known to the plaintiffs as to the correctness of any of the statements which were sent to him, the prices at which the stocks were alleged to have been bought and sold, the accuracy of the computations of arithmetic, or any of the facts stated in said accounts." There was a further finding that when each order for purchase or sale of a security was executed a written notice of the details of the transaction was sent to the defendant by the plaintiffs in addition to the monthly statements, and no objection was made by the defendant to any of these statements.        ·

What constitutes an account stated has been frequently referred to by this court, and it is unnecessary to repeat here what has been said. See *Bass* v. *Bass*, 8 Pick. 187, 193; *Rand* v. *Wright*, 129 Mass. 50, 51; *Buxton* v. *Edwards*, 134 Mass. 567, 578; *Davis* v. *Arnold*, 267 Mass. 103, 110; *Rizkalla* v. *Abusamra*, 284 Mass. 303, 306–307. There is no direct evidence that the defendant ever assented in terms to the correctness of any of the statements of accounts that were received by him, but there is the finding of the auditor that he never objected to them. The assent necessary to make out an account stated, however, may be either express or implied. *Bass* v. *Bass*, 8 Pick. 187, 193. *Davis* v. *Arnold*, 267 Mass. 103, 111. In *Charman* v. *Henshaw*, 15 Gray, 293, the defendants had rendered a written account to Charman & Co. showing as a balance due the precise sum that the plaintiff claimed upon an account stated. The question involved was whether the evidence

of this account would support the plaintiff's case where it appeared that the plaintiff alone transacted business under the name of Charman & Co. and that the defendants dealt with him alone under that name. A verdict for the plaintiff was upheld. In speaking of the proof required to show the assent of the plaintiff to the account that had been rendered, the court said, at pages 294–295: "It [assent] may indeed be inferred from the reception and retaining of the account without objection." See *Union Bank* v. *Knapp*, 3 Pick. 96; *Hayes* v. *Kelley*, 116 Mass. 300; *Folsom* v. *Grant*, 136 Mass. 493, 495; *Sturtevant* v. *Wallack*, 141 Mass. 119, 122, 123; *Lamson* v. *Varnum*, 171 Mass. 237; *Auringer* v. *Cochrane*, 225 Mass. 273. Compare *McKay* v. *Myers*, 168 Mass. 312, 315; *Newburger-Morris Co.* v. *Talcott*, 219 N. Y. 505, 511–513. It is a general rule elsewhere that the rendition of an account and its retention by the party to whom it is sent, without objection within a reasonable time, present a jury question whether the silence of the receiver of the account warrants an inference of the admission of its correctness. See cases collected in 27 L. R. A. 821–824; 29 L. R. A. (N. S.) 334; L. R. A. 1917 C, 447; Am. Law Inst. Restatement: Contracts, § 422 (2). The nature of an account stated does not prevent it being shown that it originated in an illegal transaction. *Dunbar* v. *Johnson*, 108 Mass. 519. *Wakefield* v. *Farnum*, 170 Mass. 422, 424.

We think it could not rightly have been ruled that there was no evidence in the case at bar for the jury on the first count. Inasmuch as there must be a new trial in any event, for reasons stated hereafter, it is not necessary to determine whether the error in the ruling as to the first count would have been prejudicial if the verdict on the second count could stand.

4. Although the auditor's report was in evidence, the trial judge in his charge to the jury did not mention it until his attention was directed to it by counsel for the plaintiffs. He then stated that the statute made the report *prima facie* evidence if there was no evidence introduced to control or contradict it in any way. "We have here a hearing in which witnesses have taken the stand, the net result of

which I should say this auditor's report is merely a piece of evidence before you like any other evidence, and you may accept it or reject it in whole or in part as you see fit; it is for you to say." He concluded his instructions as follows: "but the auditor's report as it stands now is merely evidence before you like any other. As I say, you can accept it in whole or in part, just as you see fit." Counsel for the plaintiffs thereupon directed the judge's attention to the fact that there was no evidence in the case that actual purchases and sales of the securities in question were not made, pointing out that the auditor found that they were made. He was told by the judge that he might take an exception, and he did. Although the precise wording of the exception, apart from the context, might leave some doubt as to just what question of law was intended to be raised, we are of opinion that, in the circumstances, the judge unquestionably must have understood that counsel was excepting to that part of the charge which permitted the jury to accept or reject any or all of the findings of the auditor, when, as a matter of fact, there was nothing to contradict the auditor's finding as to the actual purchase and sale by the plaintiffs of the securities they contended the defendant had ordered, and nothing in the subsidiary or specific findings of fact by the auditor from which an inference could be drawn as to an ultimate or other fact contrary to the finding of the auditor with reference to these purchases and sales. To permit the jury to do this was error. *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 565–567.

The case went to the jury on the second count, which was on an account annexed for money paid on the defendant's account and for charges for the plaintiffs' services in executing orders for the purchase and sale of securities. The auditor found that the defendant "traded" with the plaintiffs and bought and sold the securities as stated in the plaintiffs' account annexed, with the exception of one block of stock, the purchase of which stood upon an entirely different footing. He also found that the securities, which were the subject matter of the account annexed, were pur-

chased by the plaintiffs on the Boston or New York stock exchange, and there was no evidence to contradict this finding. The defendant denied that he gave any order for the purchase or sale of any securities, with one exception, after August 1, 1927, although the auditor found that there were several purchases and sales by the plaintiffs for the defendant's account and upon his orders after that date. The defendant also contended that the transactions in question were illegal in that they amounted to nothing but gaming. The judge in his charge told the jury that the "issue here depends on whether there was a breach of the statute," evidently reading from G. L. (Ter. Ed.) c. 137, § 4, which, in certain circumstances, gives a person the right to recover any payment made on account of credit or margin contracts to buy or sell securities where that person intends at the time that there shall be no actual purchase or sale, and where the other party to the contract had reasonable cause to believe that such intention existed. Later on he referred again to this statute, reading an excerpt from § 6, to the effect that if there is no actual transaction relieving from liability under § 4, the fact that the seller does not own the securities at the time of the contract of sale, and the fact that "statements" (settlements) are made without completion of the sale shall be *prima facie* evidence within the meaning of § 4 that there was an intention that there should be no actual purchase or sale and that there was reasonable cause to believe that said intention existed. He told the jury that that is the statute under which the defence is offered by the defendant. The issue was again stated to be whether the defendant, in dealing with the plaintiffs, intended that stock on every order should actually be bought for his account. "If he did, the plaintiffs are entitled to recover, and if he did not, and the plaintiffs here knew it, then your verdict should be for the defendant." He then pointed out that sometimes when stock is actually purchased by the broker that fact does not take the transaction out of control of the statute, and evidently he read to the jury from the case of *Savoy Finance Co. v. De Biase,* 281 Mass. 425, 432, to the effect that even the

purchase of securities or other commodities may not save the contract from the taint of illegality if the contract be such that delivery shall never be required but the purchases and sales shall be set off against each other and the principal receive the profits or make good the loss. In reading from this case he parenthetically added, when referring to whether purchases were made, "this is important here if you find that actual purchase of securities was made by the plaintiff." He then told the jury that if "that were the transaction here, again, your verdict should be for the defendant on that count 1," evidently meaning count 2.

In discussing the question of illegality the jury were instructed that the burden was upon the defendant to prove that the transactions were illegal "under the statute, that they were not actual purchases of stock on his order, either previously given or subsequently confirmed, so that the plaintiffs here stood ready to deliver to him upon call a certificate representing the number of shares purchased by him . . . . To make it a legitimate transaction, or one, I will say, that is not within the prohibition of the statute, is one where the broker stands ready upon call to deliver certificates representing the number of shares purchased if the sale be ordered." Further references were made to the question whether actual purchases and sales were made, and it was left to the jury to determine whether they were, the importance of the question being stressed. Furthermore, we think that the jury must have understood from what was said that they could find an intention that there should be no actual purchases and sales, if, in fact, in the face of the conclusive finding of the auditor to the contrary, none were made.

It is unnecessary to refer to the charge more in detail. An examination of it leads to the conclusion that the jury must have understood that whether actual purchases and sales of the securities were made was of vital importance, and that it was for them to say whether they had been made, notwithstanding the uncontradicted finding of the auditor that they had. It may be suggested that the jury may have found for the defendant on the ground that the trans-

actions were gaming and illegal.  It is possible that they may have found for the defendant upon his testimony that he never gave any orders for the purchase and sale of the securities in question, but we are also of opinion that the jury may have found, or thought they could find, for the defendant because there were no actual purchases and sales. If this last possibility was the basis of their verdict, it was not warranted on the evidence, and we are of opinion that the plaintiffs' exception to the charge relative to the force and effect of the auditor's findings should be sustained.

The issues in the case at bar were simple and clear cut. The defendant either gave orders for the purchase and sale of the securities in question or he did not.  If he gave the orders, the transactions were either legal or illegal, and quite apart from the provisions of G. L. (Ter. Ed.) c. 137.  It is true that the jury were instructed that even the purchase and sale of securities would not save the contract from the taint of illegality if that contract were such that delivery was never to be required, the purchases and sales were to be set off against one another, and the principal was to receive the profits or make good the losses.  But that statement was in the midst of a charge that stressed again and again the importance of the question whether actual purchases and sales were made by the plaintiffs.  The charge was not clear cut, nor was it wholly consistent.  In our opinion a juror would be likely to have in his mind an understanding that the defendant was entitled to a verdict if for no other reason than that actual purchases and sales were not made, and that the intent of the defendant and knowledge of that intent on the part of the plaintiffs could be found if, in fact, purchases and sales were not made.  As has already been said, this question of purchase and sale was foreclosed by the uncontradicted findings of the auditor, and it was error to permit the jury to find otherwise.  *Mahoney* v. *Boston Elevated Railway*, 271 Mass. 274, 278–279.

The record discloses no reversible error as to the verdict for the plaintiff in set-off.

*Verdict for plaintiff in set-off to stand.*
*Exceptions sustained.*